REVISED – December 18, 2000

**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

_____

No. 98-30545
_____

BARNACLE MARINE MANAGEMENT, INCORPORATED; INGRAM BARGE COMPANY,

Plaintiffs-Appellants,

VERSUS

UNITED STATES OF AMERICA,

Defendant-Appellee.

_____

Appeals from the United States District Court
for the Western District of Louisiana
_____
December 1, 2000

Before WOOD[1], DAVIS and BARKSDALE, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

Barnacle Marine Management, Inc. ("Barnacle") and Ingram Barge Company ("Ingram") appeal the district court's order dismissing the United States from consolidated limitation proceedings under 46 U.S.C. § 183 of the Limitation of Shipowners' Liability Act of 1851 ("Limitation Act"). The district court held that 33 U.S.C. § 408 of the Rivers and Harbors Act of 1899 ("Rivers and Harbors Act") provides the United States with an in personam remedy against the owner of a vessel that damages a public work. The district court

_____

[1]Circuit Judge of the Seventh Circuit, sitting by designation.

also held that this remedy is not subject to the Limitation Act, thus allowing the United States to proceed against Barnacle and Ingram in separate litigation free from limitation. For the reasons that follow, we reverse.

I.

In March 1997, the MISS TONI, a tow boat owned and operated by Barnacle, was pushing a tow of four of Ingram's barges on the Ouachita River when it caused one of the barges to allide with the Columbia Lock and Dam, a public work owned by the United States. The tow then broke up and one of the barges broke away and struck the trunnion arm of a Columbia Lock gate, causing damage to the gate that cost $1,247,200 to repair.

In 1997, Barnacle and Ingram each filed separate complaints under the Limitation Act[2] seeking exoneration from and/or limitation of liability for damages caused by the March 1997 allision. The district court issued separate orders that enjoined all other pending actions against Barnacle and Ingram and established deadlines for filing claims.

The United States timely filed claims against both Barnacle and Ingram. These claims sought damages for negligence under the general maritime law, and also sought damages under Sections 14 and 16 of the Rivers and Harbors Act (current version at 33 U.S.C. §§ 408 and 412). The district court then consolidated the two limitation proceedings.

---

[2]46 U.S.C. §§ 181-96.

The United States moved to dismiss its claims under 33 U.S.C. §§ 408 and 412 from the consolidated limitation proceeding so that it could proceed against Barnacle and Ingram to recover its full damages.   The district court granted this motion.   In its memorandum opinion, the district court held that 33 U.S.C. § 408 of the Rivers and Harbors Act provides the United States with an in personam remedy against the owner of a vessel that damages a public work.   The district court held that the United States' in personam claims under 33 U.S.C. §§ 408 and 412 are not subject to the Limitation Act, and that it could proceed against the two vessel owners for its full damages outside the consolidated limitation proceeding.   This appeal followed.

II.

The parties first disagree about whether 33 U.S.C. §§ 408 and 412 provide the United States with an in personam remedy against Barnacle and Ingram for damage to its public works, in this case a gate to a lock.   The United States concedes that if the only remedy this statute provides is an in rem one against the offending vessel, then a determination of whether the Limitation Act applies has no practical effect in this case.   In either event, the United States' recovery would be limited to the value of the vessel.   So we turn to the critical issue in this appeal:   whether 33 U.S.C. §§ 408 and 412 create an implied in personam remedy for the United States against the owner of a vessel that damages a public work.

Section 408 makes it unlawful for any person to damage or otherwise interfere with a public work built by the United States

3

to aid navigation or prevent floods.[3]  The remedies Congress expressly provided for violations of 33 U.S.C. §§ 408 and 409 are found in 33 U.S.C. §§ 411 and 412, which are also part of the Rivers and Harbors Act.  Section 411 provides for criminal fines and imprisonment for violations of § 408.  Section 412 provides, in pertinent part:

> And any boat, vessel, scow, raft, or other craft used or employed in violating any of the provisions of sections 407, 408, 409, 414, and 415 of this title shall be liable . . . for the amount of damages done by said boat . . ., and said boat . . . may be proceeded against summarily by way of libel in any district court of the United States having jurisdiction thereof.

33 U.S.C. § 412 (emphasis added).  By its express terms, therefore, § 412 provides only an in rem remedy against the vessel for violations of § 408.  All parties agree that § 412 does not expressly provide an in personam remedy for violations of § 408.

The United States argues that a companion section of the Rivers and Harbors Act, 33 U.S.C. § 409, along with judicial decisions allowing the United States to maintain an in personam action under § 409, should apply by analogy to this case.  This argument requires us to examine § 409 and the decisions under § 409.  Section 409 makes it unlawful for a vessel owner, operator, or lessor to sink or cause any vessel to be sunk in a navigable

_____

[3]Section 408 provides, in pertinent part, that:  "[i]t shall not be lawful for any person or persons to . . . injure, . . . or in any manner whatever impair the usefulness of any . . . dike, levee, . . . or other work built by the United States . . . for the preservation and improvement of any of its navigable waters or to prevent floods . . . ."

4

channel.[4]  The owner, operator, or lessor has a duty under § 409 to immediately remove such a wreck.  Criminal sanctions for violations of § 409 are provided by § 411, including both fines and imprisonment.[5]  Civil remedies for violations of § 409 (as well as § 408) are provided by § 412.  As discussed above, this gives the United States an in rem remedy against the offending vessel.

The United States, relying on Wyandotte Transp. Co. v. United States, 389 U.S. 191 (1967), argues that we should imply an in personam remedy in favor of the United States and against the vessel owners in this case.  In Wyandotte, the Supreme Court interpreted § 409 to include an implied in personam remedy in favor of the United States against the owner of a negligently[6] sunk

---

[4]Courts and commentators commonly refer to 33 U.S.C. § 409 as part of the Wreck Act.  Section 409 provides, in pertinent part, that:
> It shall not be lawful . . . to sink, or permit or cause to be sunk, vessels or other craft in navigable channels . . . .  And whenever a vessel, raft, or other craft is wrecked and sunk in a navigable channel . . . it shall be the duty of the owner, lessee, or operator of such sunken craft to commence the immediate removal of the same, and prosecute such removal diligently, and failure to do so shall be considered as an abandonment of such craft, and subject the same to removal by the United States . . . .

[5]Section 411 provides, in pertinent part, that:
Every person and every corporation that shall violate, or that shall knowingly aid, abet, authorize, or instigate a violation of the provisions of sections 407, 408, 409, 414, and 415 of this title shall be guilty of a misdemeanor, and on conviction thereof shall be punished by a fine of up to $25,000 per day, or by imprisonment (in the case of a natural person) for not less than thirty days nor more than one year, or by both such fine and imprisonment . . . .

[6]In 1986, nineteen years after Wyandotte, Congress changed § 409's standard for liability from negligence to strict liability.

5

vessel for expenses incurred in removing that vessel.  The United States argues that the Court's reasoning in Wyandotte should lead us to conclude that an in personam remedy also exists for violations of § 408.

In Wyandotte, the Court considered two consolidated cases.[7] In the first case, the United States sought a declaratory judgment, declaring negligent parties who sank a vessel in an inland waterway responsible for "removing the impediment to navigation thus created."  Wyandotte, 389 U.S. at 193.  In the other consolidated case, the United States had itself removed a sunken vessel that it claimed had been negligently sunk.  It sought in personam reimbursement for the costs of this removal under § 409.

The issue in Wyandotte was whether the United States could obtain either a declaratory judgment or an in personam judgment from a negligent shipowner which had sunk its vessel in violation of § 409.  The Court held that both remedies were available to the United States:

> The Government may, in our view, seek an order that a negligent party is responsible for rectifying the wrong done to maritime commerce by a § 15 [33 U.S.C. § 409]

---

The section was amended in 1986 by substituting the words "or to sink" for "or to voluntarily or carelessly sink".  Also, in addition to owners, the amendment made lessees and operators potential defendants under § 409.  Pub.L. 99-662, Title IX, § 939(a), 100 Stat. 4199.

[7]United States v. Cargill, Inc., and United States v. Wyandotte Transp. Co. were consolidated under the heading United States v. Cargill, Inc. in both the district court (see 1964 A.M.C. 1742), and the appellate court (see 367 F.2d 971 (5th Cir. 1966)).  On appeal to the Supreme Court, the case came under the Wyandotte heading.

violation. Denial of such a remedy to the United States would permit the result, extraordinary in our jurisprudence, of a wrongdoer shifting responsibility for the consequences of his negligence onto his victim. It might in some cases permit the negligent party to benefit from commission of a criminal act. We do not believe that Congress intended to withhold from the Government a remedy that ensures the full effectiveness of the [Rivers and Harbors] Act. We think we correctly divine the congressional intent in inferring the availability of that remedy from the prohibition of § 15. It is but a small step from declaratory relief to a civil action for the Government's expenses incurred in removing a negligently sunk vessel. Having properly chosen to remove such a vessel, the United States should not lose the right to place responsibility for removal upon those who negligently sank the vessel. . . . [R]apid removal by someone was essential. Wyandotte was unwilling to effectuate removal itself. It would be surprising if Congress intended that, in such a situation, the Government's commendable performance of Wyandotte's duty must be at Government expense.

Id. at 204-05 (emphasis added) (footnote omitted) (citations omitted).

III.

The United States gives two reasons why Wyandotte, which interpreted § 409, should control today's case brought under § 408. First, the United States argues that § 408 and § 409 are similar provisions forming a part of the Rivers and Harbors Act, and that therefore Wyandotte's reasoning should apply to cases brought under both § 408 and § 409. According to the United States, because Wyandotte rejected the vessel owner's claim that the exclusive civil remedy for violations of § 409 was the in rem remedy expressly provided in § 412, we should follow Wyandotte and imply an in personam civil remedy for violations of § 408.

Second, the United States argues that Wyandotte requires us to

7

give § 408 an expansive interpretation.  In Wyandotte, the Court stated that "[d]espite some difficulties with the wording of the [Rivers and Harbors] Act, we have consistently found its coverage to be broad.  And we have found that a principal beneficiary of the Act, if not the principal beneficiary, is the Government itself." Id. at 201 (citations omitted).

Barnacle and Ingram argue that we should not go beyond the plain language of the Rivers and Harbors Act to determine what remedies are available for violations of 33 U.S.C. § 408.  They point out that § 411 provides criminal penalties for violations of § 408, and § 412 provides an in rem remedy for violations of § 408. They argue that these remedies are the only remedies Congress provided and we should not imply an in personam civil remedy.

Barnacle and Ingram also contend that Wyandotte does not support the implication of an in personam remedy for claims brought under § 408.  Critically, Wyandotte was interpreting § 409 of the Rivers and Harbors Act, not § 408, the provision at issue in this case.  They contend that § 408 and § 409 are very different statutes that prohibit different types of conduct and impose different duties on violators.

Section 409 imposes a duty on the owner, operator, or lessee of a vessel sunk in a navigable channel to mark and remove the vessel.  Section 408 makes it illegal for any person to damage or impair a public work used in aid of navigation, but it does not impose a duty upon any person to repair the public work.  From these differences in the duty imposed on a shipowner under the two

8

statutes, Barnacle and Ingram argue that Congress intended different remedies to flow to the United States under § 408 and § 409. More specifically, Barnacle and Ingram contend that the terms of § 409 led the Wyandotte Court to conclude that the United States could obtain a declaratory judgment declaring the vessel owner responsible for removing the sunken vessel.[8] Section 408 has no similar language that would permit the United States to obtain a declaratory order under § 408 declaring that the person who damaged a public work is responsible for repairing that work.

We agree with Barnacle and Ingram that we should not imply an in personam remedy in favor of the United States against the offending shipowner. First, the plain language of § 408, § 411, and § 412 does not give the United States a civil in personam remedy against a violator of § 408.[9] Second, Wyandotte does not control this § 408 case because the Wyandotte Court expressly relied on language peculiar to § 409 in implying an in personam remedy in favor of the United States against the vessel owner. The Court observed that § 409 created a duty on the owner of the sunken

---

[8]"[I]t shall be the duty of the owner, lessee, or operator of such sunken craft to commence the immediate removal of the same, and prosecute such removal diligently . . . ." 33 U.S.C. § 409.

[9]"The starting point in every case involving construction of a statute is the language itself." Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723, 756, 95 S.Ct. 1917, 1935, 44 L.Ed.2d 539 (1975) (POWELL, J., concurring). "When that language is plain we must abide by it; we may depart from its meaning only to avoid a result 'so bizarre that Congress could not have intended it.'" Uniroyal Chemical Co., Inc. v. Deltech Corp. 160 F.3d 238, 244 (5th Cir. 1998) (quoting Demarest v. Manspeaker, 498 U.S. 184, 191, 111 S.Ct. 599, 112 L.Ed.2d 608 (1991) (quotation omitted)).

9

vessel to remove it. 389 U.S. at 206-07. This duty triggered the right of the United States to a declaratory judgment directing the vessel owner to remove the wreck. The Court stated that "[i]t is but a small step from declaratory relief to a civil action for the Government's expenses incurred in removing a negligently sunk vessel." Wyandotte, 389 U.S. at 204 (citing United States v. Perma Paving Co., 332 F.2d 754 (2nd Cir. 1964)).

Because § 408 does not give the United States the right to a declaratory order requiring the person responsible for damaging or impairing a public work to repair the work, Wyandotte's reasons for implying an in personam remedy under § 409 do not apply in this § 408 case. Our decision is consistent with a number of recent Supreme Court decisions holding that we should be reluctant to imply a remedy broader than Congress expressly provided. See e.g., Touche Ross & Co. v. Redington, 442 U.S. 560, 99 S.Ct. 2479 (1979), California v. Sierra Club, 451 U.S. 287, 101 S.Ct. 1775 (1981), Karahalios v. National Fed'n of Fed. Employees, 489 U.S. 527, 109 S.Ct. 1282 (1989).

We realize this decision declining to imply an in personam remedy under § 408 puts us in conflict with the Sixth Circuit's decision in Hines, Inc. v. United States, 551 F.2d 717 (6th Cir. 1977). In Hines, the Sixth Circuit, with very little analysis, held that Wyandotte controlled. See id. at 720-23. For the reasons stated above, we respectfully disagree.

IV.

For the above reasons, the orders of the district court

10

dismissing the United States from Barnacle and Ingram's limitation proceedings are reversed and the case is remanded for further proceedings.

REVERSED AND REMANDED.