BARKETT, Circuit Judge:
Tug Allie-B, Inc., and Dann Ocean Towing, Inc. (collectively “Tug Allie”) appeal an order declaring that claims by the United States brought pursuant to the Park System Resources Protection Act, 16 U.S.C. § 19jj et seq. (“PSRPA”), for damages caused by the' tug ALLIE-B to a coral reef while towing a barge owned by Allied Towing Corporation (“Allied”), are not subject to the Limitation of Vessel Owner’s Liability Act, 46 U.S.C. app. § 181 et seq. (“Limitation Act”). The question of whether the United States’ claims brought pursuant to PSRPA are subject to the Limitation Act is one of first impression.
BACKGROUND
On July 20, 1998, the tug ALLIE-B, a commercial tug boat towing Allied’s 354-foot barge, ATC-350, ran aground and collided with coral reefs in the vicinity of Ledbury Reef in Biscayne National Park (“National Park”). The tug managed to power itself off the reef, but, in doing so, caused a crater-like blow hole in the ocean floor. The tug boat then pulled the barge free from its grounded position atop the reef. The grounding of the tug boat and barge, and the efforts to remove them from the reef, caused significant injury to natural resources located within the National Park. The hulls of both vessels, and the cable connecting the vessels, destroyed extensive tracts of coral reef, including hard and soft corals and reef framework.
After the collision, Tug Allie-B, Inc., as owner of the tug boat, and Dann Ocean Towing, Inc. (“Dann Towing”), as operator of the tug boat, filed a petition for exoneration from or limitation of liability, pursuant to the Limitation Act, for damages arising out of the grounding of the tug boat and barge. The Limitation Act limits a vessel owner’s liability for any damages arising from a maritime accident to the post-accident value of the vessel and its pending freight. 46 U.S.C. app. *940 § 183(a).[1] Tug Allie alleged that the post-accident value of the vessel and pending freight amounted to $1,204,860 which would limit liability to that amount pursuant to the Limitation Act.[2] The United States and Allied filed an Answer to the limitation claims and filed their own claims for damages against Tug Allie in an amount that exceeded the limitation fund by approximately $2,864,340. Allied sought $1,000,000 for damages incurred as a result of the grounding of its barge. The United States sought $3,069,200 in damages, claiming that, pursuant to the PSRPA, it was entitled to all damages due to injuries to resources in the National Park as a result of the grounding.[3] The relevant provisions of the PSRPA include:
16 U.S.C. § 19jj-l(a):
[A]ny person who destroys, causes the loss of, or injures any park system resource is liable to the United States for the response costs and damages resulting from such destruction, loss, or injury.
16 U.S.C. § 19jj — 1(b):
[a]ny instrumentality, including but not limited to a vessel, vehicle, aircraft, or other equipment that destroys, causes the loss of, or injures any park system resource or any marine or aquatic park resource shall be liable in rem to the United States for response costs and damages resulting from such destruction, loss, or injury to the same extent as a person is liable under subsection (a) of this section.
16 U.S.C. § 19jj(c):
“Response costs” means the costs of actions taken by the Secretary of the Interior to prevent or minimize destruction or loss of, or injury to, park system resources; or to abate or minimize the imminent risk of such destruction, loss, *941 or injury; or to monitor the ongoing effects of incidents causing such destruction, loss or injury.
16 U.S.C. § 19jj(b):
“Damages” includes the following:
(1) Compensation for—
(A) (i) the cost of replacing, restoring, or acquiring the equivalent of a park system resource; and
(ii) the value of any significant loss of use of a park system resource pending its restoration or replacement or the acquisition of an equivalent resource, or
(B) the value of the park system resource in the event the resource cannot be replaced or restored.
(2) The cost of damage assessments under section 19jj-2(b) of this title.
The district court determined that the Government’s claims under the PSRPA are not subject to the Limitation Act, and the United States would be entitled to a complete recovery of its damages, if proven. This appeal followed.[4] Because the district court’s ruling involved purely an issue of law, that is, statutory construction, we review its determination de novo. Marine Trans. Serv. Sea-Barge Group, Inc. v. Python High Performance Marine Group, 16 F.3d 1133, 1138 (11th Cir.1994).
DISCUSSION
Tug Allie argues on appeal that the Limitation Act and the PSRPA can be read harmoniously by holding that although claims can be brought under the PSRPA, damages would be limited in accordance with the Limitation Act. The Government argues that both the relevant statutory language and the congressional intent underlying the statutory schemes reflect a clear conflict that cannot be reconciled without limiting one statutory enactment to accommodate the other. Because the PSRPA is the later-enacted statute, as well as the more specific, the Government argues that the conflict must be resolved by applying the PSRPA without limiting its claims for damages pursuant to the Limitation Act.
To resolve the issue presented, we employ the fundamental principles of statutory construction. See, e.g., K Mart Corp. v. Cartier, Inc., 486 U.S. 281, 291, 108 S.Ct. 1811, 100 L.Ed.2d 313 (1988) (“In ascertaining the plain meaning of the statute, the court must look to the particular statutory language at issue, as well as the language and design of the statute as a whole.”). Additionally, we follow the long established rule, that “a new[er] statute will not be read as wholly or even partially amending a prior one unless there exists a positive repugnancy between the provisions of the new and those of the old that cannot be reconciled.” Regional Rail Reorganization Act Cases, 419 U.S. 102, 133— 34, 95 S.Ct. 335, 42 L.Ed.2d 320 (1974). Stated alternatively, “[e]ourts generally adhere to the principle that statutes relating to the same subject matter should be construed harmoniously if possible, and if not, that more recent or specific statutes should prevail over older or more general ones.” Southern Natural Gas Co. v. Land, Cullman County, 197 F.3d 1368, 1373 (11th Cir.1999) (quotations and citations omitted). Consistent with this view, we begin by reviewing the language of both the PSRPA and the Limitation Act, and then examine the purpose and structure of each Act to determine whether the two Acts can be read harmoniously or if when read together they present “a positive repugnancy” or conflict that cannot be *942 reconciled. Regional Rail Reorganization Act Cases, 419 U.S. at 134, 95 S.Ct. 335. The starting point for all statutory interpretation is the language of the statute itself. Federal Reserve Bank of Atlanta v. Thomas, 220 F.3d 1235, 1239 (11th Cir.2000). We note first that there is nothing in the language of the PSRPA which suggests that any damages under the Act should be ih any way limited. To the contrary, the PSRPA expressly speaks to the liability for “response costs and damages” in terms of making the government whole for all of its losses. Response costs are those taken to prevent, abate or minimize any injury, or imminent risk of injury, to park system resources, as well as whatever costs are incurred to monitor the ongoing effects of incidents causing destruction, loss or injury. See 16 U.S.C. § 19jj(c). Damages include compensation for replacing, restoring, or acquiring the equivalent of a park system resource or its value; for the loss of use until the restoration, replacement or acquisition of an equivalent resource is accomplished; and for the cost of damage assessments under section 19jj — 2(b). See 16 U.S.C. § 19jj(b). As the above language shows, the measure of damages under the PSRPA is defined solely by reference to the damage an entity has inflicted on the park land at issue, and secondary losses stemming from that injury. Nothing in the statute suggests that the damages are capped by any external factor. Therefore, in the absence of any explicit statutory language limiting damages under the PSRPA, we conclude that Congress contemplated that the Government could seek full recovery under the statute for accidents causing injury to park lands.
On the other hand, the language of the Limitation Act provides for a limitation on the total of all recoverable damages in a marine accident to the post-accident value of the ship and its cargo, no matter how many claimants there may be. See 46 U.S.C. app. § 183(a). See also Hartford Accident & Indemnity Co. of Hartford, 273 U.S. at 214, 47 S.Ct. 357 (“liability as owner shall be limited to the value of the vessel as appraised after the occurrence of the loss and the pending freight for the voyage”). Accordingly, application of the Limitation Act here, in a case where a ship has destroyed Government park land, would prevent the United States from recovering all of the costs itemized as damages under the PSRPA. Indeed, in some circumstances, the Limitation Act’s application would result in the inability of the United States to recover any of the PSRPA damage remedies, such as when the ship causing the damage is a total loss, rendering its post-accident value as zero. Therefore, on review of the plain language of the PSRPA and the Limitation Act we conclude that the statutes present a conflict regarding the scope of a defendant’s liability when the Government sues the defendant for allowing a marine vessel to injure park land.
Close reading of the two statutes reveals even more central conflicts, as each is' based upon a fundamentally different theory of liability, and each is governed by different rules controlling which assets a finding of liability will attach. Beginning with the theory of liability, we note that the PSRPA is in effect a strict liability statute, with statutorily defined defenses.[5] *943 16 U.S.C. § 19jj-1(c). Specifically, under the PSRPA, a defendant can avoid liability for damages only if “(1) the destruction, loss of, or injury to the park system resource was caused solely by an act of God or an act of war; (2) such person acted with due care, and the destruction, loss of, or injury to the park system resource was caused solely by an act or omission of a third party, other than an employee or agent of such person; or (3) the destruction, loss, or injury to the park system resource was caused by an activity authorized by Federal or State law.” 16 U.S.C. § 19jj — 1(c). In contrast, the Limitations Act is typically applied when the claim at issue is based on a theory of negligence. In re Beiswenger Enters. Corp., 86 F.3d at 1036 (noting that in a limitation proceeding under the Limitation Act, the court engages in a two-step analysis with the first being a negligence or unseaworthiness finding and the second being the privity or knowledge of the vessel owner). Indeed, all of the cases Tug Allie identifies to support its view that the Limitation Act could limit PSRPA liability concern maritime statutes that are based in negligence, and thus a vessel owner can seek to limit or avoid liability depending on whether he or she was at fault. See, e.g., 46 U.S.C. app. § 688, (“The Jones Act”), 46 U.S.C. app. § 761 et. seq. (“The Death on the High Seas Act”) (“DOHSA”), & 46 U.S.C. app. § 190 et seq., (“The Harter Act”).[6]
Relatedly, because the PSRPA is a strict liability statute that looks exclusively to the cause of the damage, it permits only a very limited number of defenses, as is customary with strict liability statutes. See, e.g., Clean, Water Act, 33 U.S.C. § 1321(f); Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (“CERCLA”), 42 U.S.C. §§ 9607-9675. Indeed, the legislative history of the PSRPA suggests that defenses under the Act were intended to be narrow and exclusive.[7] See Senate Comm, on Energy & *944 Nat. Res., S.Rep. No. 328, 101st Cong., 2d Sess. 1, reprinted in 1990 U.S.C.C.A.N. 603, 605 (1990). The Supreme Court has held that “[w]here Congress explicitly enumerates certain exceptions to a general prohibition, additional exceptions are not to be implied, in the absence of evidence of a contrary legislative intent.” Andrus v. Glover Constr. Co., 446 U.S. 608, 616-17, 100 S.Ct. 1905, 64 L.Ed.2d 548 (1980). This recognition presents another source of conflict, for if we applied the Limitation Act to PSRPA claims, we would effectively incorporate its defenses into the PSRPA.
The last conflict between the statutes is perhaps the greatest: the PSRPA and the Limitation Act provide for different attachment rules upon a finding of liability. Specifically, the PSRPA holds a party responsible in personam or in rem for “response costs and damages.” 16 U.S.C. § 19jj-l(a) and (b).[8] Therefore, to establish liability, the PSRPA looks to the cause of the injuries to the park resources, and may hold the responsible person or instrumentality liable for damages which have no relation to the value of the instrumentality causing the injury. 16 U.S.C. § 19jj(a) and (b). In contrast, under the Limitation Act, a defendant can avoid or limit liability by demonstrating a lack of privity or knowledge of the negligence or unseaworthiness of the vessel. See Hercules Carriers, 768 F.2d at 1563-64 (In a limitation proceeding, the court undertakes the following analysis: “First, the court must determine what acts of negligence or conditions of unseaworthiness caused the accident. Second, the court must determine whether the shipowner had knowledge or privity of those same acts of negligence or conditions of unseaworthiness.”) (internal quotations and citation omitted); see also In re Beiswenger Enters. Corp., 86 F.3d at 1036; Farrell Lines Inc. v. Jones, 530 F.2d 7 (5th Cir.1976).
In other words, even if the judgment is in personam, under the Limitation Act, the amount of the judgment is limited to the post-accident value of the res causing the damage. As noted earlier, in addition to an in rem cause of action, the PSRPA provides for an action in person-am. A judgment against an individual need not be related to any res and can look to all of a defendant’s resources for satisfaction. To conclude the Limitation Act applies to the PSRPA would have the effect of rendering the in personam clause meaningless, as recovery would be limited to the value of the res. Such a result would violate the canon of statutory construction that discourages courts from adopting a reading of a statute that renders any part of the statute mere surplus-age. See Bailey v. United States, 516 U.S. 137, 146, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995) (noting that each word in a statute is intended to have “particular, nonsuperfluous meaning”).
Thus, our reading of the Limitation Act and the PSRPA shows that the two present an irreconcilable conflict or a “positive repugnancy” as the statutes’ provisions are inconsistent on their face, and a deeper reading of their terms shows that they are based on conflicting concepts of liability and different rules for the compensation of injury.
*945 Tug-Allie seeks to avoid this result by arguing that the ambiguity created by the apparent applicability of both statutes to the situation before us requires that we look to congressional intent. Specifically, Tug-Allie argues that the absence of reference to the Limitation Act in the PSRPA proves that Congress intended that the Limitation Act apply.[9] To support its view, Tug Allie directs our attention to the Oil Pollution Act of 1990, 33 U.S.C. § 2701 et seq. (“OPA”), and the Marine Sanctuaries Act, 16 U.S.C. § 1431 et seq. (“MSA”), pointing out that both the OPA and the M.S.A. § contain specific provisions precluding the application of the Limitation Act to damage claims under those statutes. Thus, Tug Alie argues that if Congress intended to preclude the application of the Limitation Act, it would have said so as it did in the OPA[10] and the MSA.
Congressional silence, however, can be interpreted in a number of ways. As this Circuit has stated “[s]ilence may indicate that the question never occurred to Congress at all, or it may reflect mere oversight in failing to deal with a matter intended to be covered, or it may demonstrate deliberate obscurity to avoid controversy that might defeat the passage of legislation.” Rogers v. Frito-Lay, Inc., 611 F.2d 1074, 1085 (5th Cir.1980).[11] Moreover, with respect to the Limitation Act itself, we have previously noted that the Supreme Court has taken a “restrictive view” of the Limitation Act, and courts have been reluctant to read into congressional silence an implied deference to the Limitation Act. See Hercules Carriers, Inc. v. Claimant State of Fla., Dept. of Transp., 768 F.2d 1558, 1564 (11th Cir.1985) (citing Maryland Casualty Co., v. Cushing, 347 U.S. 409, 437, 74 S.Ct. 608, 98 L.Ed. 806 (1954); and The Main v. *946 Williams, 152 U.S. 122, 132-33, 14 S.Ct. 486, 38 L.Ed. 381 (1894)).
Indeed, in an analogous case, this Court rejected Tug Allie’s argument in the context of the Rivers and Harbors Act (“RHA”), 33 U.S.C. § 401 et seq. (sections collectively known as the “Wreck Act”). University of Texas Med. Branch at Galveston v. United States, 557 F.2d 438 (5th Cir.1977), cert. denied 439 U.S. 820, 99 S.Ct. 84, 58 L.Ed.2d 111 (1978). In University of Texas Medical Branch at Galveston, appellants’ vessel collided with another ship causing a dredge to sink. In addition to destroying the dredge, the wreck impeded shipping in the area. The United States acted immediately to remove the wreck, at a cost of $3,000,000. In turn, appellants sought a limitation of liability, based on the claimed value of their ship, $240,000. The Wreck Act did not make any reference to the Limitation Act. However, this Court declined to read Congress’ silence as an intention to apply the Limitation Act. Relying on Wyandotte Transportation Co. v. United States, 389 U.S. 191, 88 S.Ct. 379, 19 L.Ed.2d 407 (1967), this Court noted that, although the Wyandotte Court did not address the applicability of the Limitation Act, “Wyan-dotte has been interpreted as impliedly ousting the Limitation Act from application to the government’s recovery of wreck removal expense.” University of Texas Med. Branch at Galveston, 557 F.2d at 447.[12]
Moreover, if Congress intended that its silence be read to mean that the Limitation Act applies, what then would be the significance of other enactments specifically providing that the Limitation Act does apply? Under Tug Allie’s analysis, silence would then mean the converse of what Tug Allie suggests here. That is, because Congress included language providing for the application of the Limitation Act in the Carriage of Goods by Sea Act, 46 U.S.C. app. § 1300 et seq. (“COGSA”), and the Harter Act, 46 U.S.C. app. § 190 et seq., silence must mean that the Limitation Act should not apply. Both COGSA and the Harter Act expressly preserve a vessel owner’s right to seek a limitation of liability under the Limitation Act. See COGSA, 46 U.S.C. app. § 1308 (“the provision of this chapter shall not affect the rights and obligations of the carrier ... under the provisions of sections 175, 181 to 183 and 183b to 188 of this title”); Harter Act, 46 U.S.C. app. § 196 (“Sections 190-195 of this title shall not be held to modify or repeal sections, 181, 182, and 183 of this title”). We find that the only reasonable conclusion is that Congress’ silence on the applicability of the Limitation Act is, by itself, not sufficient to determine congressional intent.
Turning to the purposes of the two enactments, we note that the Limitation Act was passed in 1851 “to encourage ship building and to induce capitalists to *947 invest money in this branch of industry,” and that it achieves this purpose by “exempting innocent shipowners from liability, beyond the amount of their interest.” Norwich & N.Y. Transp. Co. v. Wright, 80 U.S. (13 Wall.) 104, 121, 20 L.Ed. 585 (1871). It was passed at a time when Congress sought to encourage the United States’ fledgling shipping industry. The PSRPA was enacted in 1990 to protect and preserve the resources of the United States’ national parks. The PSRPA was prompted, in part, by the grounding of a freighter in Biscayne National Park. See Senate Comm. on Energy & Nat. Res., S.Rep. No. 328, 101st Cong., 2d Sess. 1, reprinted in 1990 U.S.C.C.A.N. 603, 605 (1990). Accordingly, as stated by Congress, a central purpose of the PSRPA was to authorize the United States to “initiate legal action against individuals who destroy or injure living or non-living marine or Great Lakes aquatic resources within units of the National Park System, and to allow the Secretary [of the Interior] to use funds recovered as a result of damage to living or non-living resources ... for restoration of such resources.” Id.
The purpose of the Limitation Act is to provide an exemption from or a limitation on liability in order to encourage shipping, while the PSRPA is aimed at full restoration of park resources that have been damaged by third parties. As noted above, under the Limitation Act, in many instances, destroyed resources could not be fully restored. Thus, application of the Limitation Act would obviously frustrate the restoration goals articulated in the PSRPA.
The Ninth Circuit reached a similar conclusion in addressing the applicability of the Limitation Act to the analogous Trans-Alaska Pipeline Authorization Act of 1973, 43 U.S.C. §§ 1651-55 (“TAPAA”). See In re Glacier Bay, 944 F.2d 577 (9th Cir.1991). TAPAA’s purpose, in part, was to establish a comprehensive liability scheme applicable to damages to natural resources resulting from the transportation of trans-Alaska pipeline oil. The Ninth Circuit held: “[s]imply stated, the Limitation Act is contrary to every goal of the TAPAA. It allows vessel owners virtually to eliminate liability for catastrophic damages. Application of the Limitation Act to any aspect of the TAPAA would frustrate completely TAPAA’s comprehensive remedial nature.” Id. at 583. Likewise, in rejecting a claim that the procedural aspects of the Limitation Act apply to the OPA, the First Circuit found that the OPA is in irreconcilable conflict with the Limitation Act, as application of the Limitation Act to the OPA would enable a responsible party to escape liability for catastrophic damages. See Complaint of Metlife Capital Corp., 132 F.3d 818, 822 (1st Cir.1997); see also United States v. CF Industries, Inc., 542 F.Supp. 952, 955-56 (D.Minn.1982) (holding that the Limitation Act did not apply to the Clean Water Act and explaining that “[t]his country’s policy of cleaning up and preserving the environment is one that becomes, if anything, more important with the passage of time. As the population of the country increases, the natural resources are subjected to greater pressures and accordingly need greater safeguards. On the other hand, the policy embodied in the Limitation Act has been achieved to such an extent that it has been called ‘hopelessly anachronistic.’ ”) (citations omitted).
Moreover, unlike the OPA and the MSA, which are primarily maritime statutes, the PSRPA protects park system resources whether on land or in maritime parks. To apply the Limitation Act to the PSRPA would require assuming that Congress intended to create a statutory scheme that ensured full protection for park resources on land but only partial protection of our marine park resources. Nothing in the *948 statute or the legislative history supports such a view, nor do we think that Congress would have intended such a dichotomous result. See, e.g., United States v. Albertini, 472 U.S. 675, 680, 105 S.Ct. 2897, 86 L.Ed.2d 536 (1985) (“[O]nly the most extraordinary showing of contrary intentions in the legislative history will justify a departure from that language.”) (citations and internal quotations omitted); First United Methodist Church v. United States Gypsum Co., 882 F.2d 862, 869 (4th Cir.1989) (stating that common sense is the “most fundamental guide to statutory construction”), cert. denied, 493 U.S. 1070, 110 S.Ct. 1113, 107 L.Ed.2d 1020 (1990). See also Justice Frankfurter, Some Reflections on the Reading of Statutes, 47 Colum. L.Rev. 527, 535 (1947) (stating that “Ij’ludges must not read [meaning] out [of a statute] except to avoid patent nonsense or internal contradiction”). The only conclusion that avoids such an illogical reading of the PSRPA is that Congress intended to protect parks resources to the same extent, whether such resources are on land or at sea.
Viewing both the statutory language of the PSRPA and its broader remedial aim of protecting and preserving our nation’s natural resources, we find nothing that suggests that Congress intended the PSRPA’s statutory scheme to provide for only limited recovery, thereby burdening the government, and ultimately the taxpayer, with the costs associated with destruction, loss, or injury to park resources that are in fact attributable to an identifiable person or instrumentality.[13] On the contrary, the PSRPA is aimed at ensuring that the person or instrumentality responsible for any destruction, loss, or injury covers all of the costs associated with such destruction, loss, or injury, and applying the Limitation Act to PSRPA claims would completely frustrate this purpose.
All the foregoing reasons dictate that the PSRPA and the Limitation Act are conflicting congressional expressions that cannot be harmonized without affecting the intent and directives of one or the other. Having concluded that the two statutes pose an irreconcilable conflict in this case, we must consider whether one of the statutes implicitly overrules the other or creates an exception which limits one statute’s application in this class of cases.
In making this determination, we rely on the long-standing principle that, if two statutes conflict, the more recent or more specific statute controls. See, e.g., Southern Natural Gas Co., 197 F.3d at 1373 (“more recent or specific statutes should prevail over older or more general ones”) (quotation and citation omitted); United States v. Devall, 704 F.2d 1513, 1518 (11th Cir.1983) (because the conflict between the Bankruptcy Code and the Social Security Act is apparent and cannot be reconciled without limiting one to accommodate the other, the later enacted statute *949 must prevail over the earlier enacted, more general statute); Hines v. United States, 551 F.2d 717, 725 (6th Cir.1977) (when the purposes of two statutes appear to be in conflict with each other, and there is no statutory language which makes any cross reference and the legislative history is silent as to the possible conflict, it is generally assumed that the later statute constitutes an amendment of the earlier one); I.C.C. v. Southern Ry. Co., 543 F.2d 534, 539 (5th Cir.1976) (where there is conflict, the subsequent enactment governs).
Obviously, the PSRPA is the most recent in time, enacted almost 140 years after the Limitation Act. Thus, on this basis alone, we can conclude that the PSRPA controls.[14] We also conclude that the PSRPA is the more specific statute. The PSRPA’s provisions are narrowly tailored to address incidents involving destruction, loss, or injury only to “park system resources” (a term defined by the PSRPA), and allows the government to recover only for response costs and damages associated with such incidents. In contrast, the Limitation Act applies to “embezzlement, loss, or destruction by any person of any property, goods, or merchandise shipped or put on board of such vessel, or ... any loss, damage, or injury by collision, or ... any act, matter, or thing, loss, damage or forfeiture, done, occasioned, or incurred.” 46 U.S.C. app. § 183(a). Although the Limitation Act’s reference to “any loss, damage, or injury by collision” may be read to include loss or damage to park system resources, when a conflicting statute — the PSRPA — specifically defines, and is tailored to address, “park system resources,” we must find that the more specific statute governs.
For all of the foregoing reasons, the decision of the district court holding that the Limitation Act does not apply to claims under the PSRPA is
AFFIRMED.

. The Limitation Act provides, in relevant part:
The liability of the owner of any vessel, whether American or foreign, for any embezzlement, loss, or destruction by any person of any property, goods, or merchandise shipped or put on board of such vessel, or for any loss, damage, or injury by collision, or for any act, matter, or thing, loss, damage or forfeiture, done, occasioned, or incurred, without the privity or knowledge of such owner or owners, shall not, except in the cases provided for in subsection (b) of this section, exceed the amount or value of the interest of such owner in such vessel, and her freight then pending.
46 U.S.C. app. § 183(a). See also Hartford Acc. & Indem. Co. of Hartford v. Southern Pac. Co., 273 U.S. 207, 214, 47 S.Ct. 357, 71 L.Ed. 612 (1927) ("liability as owner shall be limited to the value of the vessel as appraised after the occurrence of the loss and the pending freight for the voyage").

. When faced with liability for a maritime accident, a vessel owner may file a petition in federal court seeking protection under the Limitation Act. In re: Beiswenger Enters. Corp., 86 F.3d 1032, 1036 (11th Cir.1996). If the limitation is granted, and the vessel owner subsequently is found liable, the admiralty court distributes the limitation fund among the damage claimants in an equitable proceeding known as concursus. Id. at 1036. Claimants asserting valid claims receive a pro rata distribution of the fund deposited or secured, or the proceeds of the vessel and pending freight. Supp. Adm. R. F(8). See also Bouchard Transp. v. Updegraff, 147 F.3d 1344, 1347 (11th Cir.1988). As limitation is based on the post-accident value of the vessel and its freight, damages can be significantly limited, especially in cases in which the vessel sinks or the freight is lost. The court "may enter judgment in personam against the owner as well as judgment in rem against the res, or the substituted fund.” Hartford Accident & Indemnity Co. of Hartford, 273 U.S. at 215, 47 S.Ct. 357.

.Although the United States has subsequently amended its damages figure to $2,000,000, the combined amount sought by the United States and Allied still exceeds the limitation fund by a substantial amount. In amending its complaint, the United States also added Allied as a defendant.

. We deny Tug Allie’s motion to strike the brief of Appellee Allied. Allied's brief simply adopts the United States' brief in its entirety; it makes no separate arguments.

. As this is the first case addressing the PSRPA, this Circuit has not held previously that the PSRPA is a strict liability statute. However, the in personam liability provision of the PSRPA is substantially the same as that of the Marine Protection, Research and Sanctuaries Act (“MPRSA”), compare 16 U.S.C. § 19jj — 1(a) with 16 U.S.C. § 1443(a)(1), and this Circuit has held that the MPRSA imposes strict liability. See United States v. M/V JAC *943 QUELYN L„ 100 F.3d 1520, 1521 (11th Cir.1996). Accordingly, viewing the language of the PSRPA, and using this Circuit's analysis of the language of the MPRSA, we conclude that the PSRPA is a strict liability statute.

. See DOHSA, 46 U.S.C. app. §§ 761 and 766 (imposing liability when death caused by “wrongful act, neglect, or default occurring on the high seas” and mandating that a court "reduce the recovery” when "decedent has been guilty of contributory negligence”); Harter Act, 46 U.S.C. app. § 192 (providing that vessel owners can limit liability if they "exercise due diligence”); Jones Act, 46 U.S.C. app. § 688. See also Thomas J. Schoenbaum, Admiralty and Maritime Law, 3rd Ed., at 490 (2001) ("Liability [under the Jones Act] depends on proving negligence.”).
Also, as noted above, the Harter Act specifically preserves a vessel owner's right to limitation. See 46 U.S.C. app. § 196.
The Longshoreman and Harbor Workers Compensation Act, 33 U.S.C. §§ 901-950 ("LWHCA”), is the only other act relied upon by Tug Allie. At first glance, the LWHCA may appear analogous, as it establishes a no-fault scheme. In fact, however, the LWHCA establishes a no-fault scheme with respect to employer liability, and it further provides a statutory cause of action for negligence against third party vessel owners. See 33 U.S.C. § 905(b). Thus, it is distinguishable from the PSRPA.

. Similarly, courts have held that the enumerated defenses of other strict liability schemes are exclusive and should be narrowly construed. See, e.g., United States v. West of England Ship Owner’s Mutual Prot. & Indem. Assoc., 872 F.2d 1192, 1200 (5th Cir.1989) (Clean Water Act defendants have burden of proof that one of the four liability exceptions exists; these exceptions must be narrowly construed); Levin Metals Corp. v. Parr-Richmond Terminal Co., 799 F.2d 1312, 1316-17 (9th Cir.1986) (CERCLA statutory defenses exclusive); Steuart Transp. Co. v. Allied Towing Corp., 596 F.2d 609 (4th Cir.1979) (shipowner may only recover costs under Clean Water Act if discharge was due to one of the causes that would excuse all liability); United States v. Price, 577 F.Supp. 1103, 1113-14 (D.N.J.1983) (CERCLA intended to impose *944 strict liability subject only to listed affirmative defenses).

. Moreover, the in rem liability provision of the PSRPA imposes liability to “the same extent as" is imposed in personam. 16 U.S.C. § 19jj — 1(b). This further suggests that the PSRPA conflicts with any statute, including the Limitation Act, that attempts to limit liability to the value of the vessel or instrument that causes the destruction or injury to park system resources.

. Under the rules of statutory construction set out by the Supreme Court, in determining the meaning of an ambiguous statute, "we look not only to the particular statutory language, but to the design of the statute as a whole and to its object and policy." Crandon v. United States, 494 U.S. 152, 158, 110 S.Ct. 997, 108 L.Ed.2d 132 (1990); see also K Mart Corp. v. Cartier, Inc., 486 U.S. 281, 291, 108 S.Ct. 1811, 100 L.Ed.2d 313 (1988) ("In ascertaining the plain meaning of the statute, the court must look to the particular statutory language at issue, as well as the language and design of the statute as a whole.”); United States v. McLemore, 28 F.3d 1160, 1162 (11th Cir.1994) ("In interpreting the language of a statute ... we do not look at one word or one provision in isolation, but rather look to the statutory scheme for clarification and contextual reference.”). We thus carefully analyze both Acts to discern whether either Act contemplated the application of the other.

. In specifically precluding application of the Limitation Act, the OPA imposed its own liability scheme. See 33 U.S.C. §§ 2704 and 2718(c). Accordingly, the OPA explicitly limits liability of the responsible party under the Act, unless one of the enumerated exceptions applies (e.g., such as the incident was caused by gross negligence, willful misconduct, or violation of applicable Federal regulations, or failure to report the incident and provide cooperation in removal activities). 33 U.S.C. § 2704(c). The liability scheme set out in the OPA parallels that of the Limitation Act. That is, the OPA provides for limitation of liability, unless the responsible party was grossly negligent or engaged in willful misconduct, just as the Limitation Act limits liability unless the vessel owner had privity or knowledge of the negligence or unseaworthiness that caused the damage or loss. The liability provisions of the OPA suggest that Congress acted because it intended to limit liability in a manner that differed from the Limitation Act's scheme. From this, however, it does not follow that Congress must include provisions related to limitation of liability in a statute not intended to limit liability.

. In Bonner v. Prichard, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions handed down prior to the close of business on September 30, 1981.

. Tug Allie relies on a recent Fifth Circuit case, Barnacle Marine Management, Inc., v. Vulcan Materials Co., 233 F.3d 865 (5th Cir.2000), to suggest that Wyandotte is inapposite. They argue that the analogous section of the Wreck Act is Section 408, which was addressed in Barnacle. Even if we put aside the fact that this Court is bound by University of Texas Medical Branch at Galveston and Wyan-dotte, and not by Barnacle, we still conclude that Barnacle does not apply here. In Barnacle, the Fifth Circuit found that “the plain language of § 408, § 411, and § 412 does not give the United States a civil in personam remedy against a violator of § 408” and thus the vessel owner was not precluded from seeking a limitation of liability. Here, however, the plain language of the PSRPA explicitly creates an in personam remedy. Accordingly, we find the holding in Barnacle to be irrelevant to determining whether the Limitation Act applies to claims brought under the PSRPA.

. We find no merit to Tug Allie's argument that the PSRPA's purpose has nothing to do with the amount of funds available as damages or a party's liability, but was intended merely as a means of ensuring that funds would be available to the Secretary of the Interior to repair or replace the damaged or lost resources “without further congressional action,” see 16 U.S.C. § 19jj — 3, rather than having to wait for congressional authorization from general Treasury funds. If the PSRPA was intended to provide funds to the Secretary of Interior in an expeditious manner in order to avoid further injury to park resources, it seems implausible that Congress envisioned making only a pro rata share of such necessary funds available. It is far more likely that Congress aimed to provide a means by which the Secretary of the Interior could recover the full amount needed for response costs and damages. The absence of any provision on prioritization of funds from the language of the PSRPA further suggests that Congress envisioned full recovery.

. Tug Allie is correct that the Limitation Act has not been repealed or overruled, but we note that it has been called into question during the past century and a half of litigation. See, e.g., Hercules Carriers, 768 F.2d at 1564 (noting that the Supreme Court has taken a "restrictive view" of the Limitation Act); University of Texas Med. Branch at Galveston, 557 F.2d at 441 (referring the Limitation Act as "hopelessly anachronistic”).