**UNITED STATES of America,
Appellant,**

v.

**FEDERAL BARGE LINES, INC., Dundee Cement Company in personam, and M/V TOM TALBERT, her engines, tackle, etc., in rem, Appellees.**

No. 77–1527.

United States Court of Appeals,
Eighth Circuit.

Submitted Dec. 15, 1977.

Decided March 30, 1978.

As Amended on Denial of Rehearing and Rehearing En Banc May 11, 1978.

Elmer Price (argued), of Goldstein & Price, St. Louis, Mo., on brief, for appellees, Federal Barge Lines, Inc. and M/V Tom Talbert.

Before LAY and BRIGHT, Circuit Judges, and SCHATZ, District Judge.*

BRIGHT, Circuit Judge.

The United States appeals from the dismissal of its complaint against Federal Barge Lines, Inc., Dundee Cement Company, and the M/V Tom Talbert. The Government brought the action under sections 10, 14, and 15 of the Rivers and Harbors Act of 1899, 33 U.S.C. §§ 403, 408, and 409 (1970), to recover the expenses incurred in salvaging a barge owned by Dundee. At the close of the Government's case, the district court concluded that the Government had failed to prove negligence, as required under 33 U.S.C. § 409, and that 33 U.S.C. §§ 403 and 408 did not apply to the circumstances of this case; accordingly, it granted the defendants' motions to dismiss. We reverse and remand for further proceedings.

## I. Background.

Federal Barge Lines, Inc. (Federal) owns and operates the M/V Tom Talbert, a diesel towboat. Dundee Cement Company (Dundee) owns a barge numbered DDC–12. On August 16, 1972, the Tom Talbert was towing the DDC–12 and fourteen other barges upriver on the Mississippi River near Saverton, Missouri. The DDC–12 carried a load of cement. Shortly after the flotilla passed through Lock & Dam # 22, the DDC–12 grounded on an unknown obstruction in the channel, broke away from the flotilla, and drifted back towards the dam. The captain and crew of the Tom Talbert tried unsuccessfully to catch the DDC–12. The barge lodged on icebreakers located approximately twenty feet upstream of the dam and sank.

Emmett B. Lewis, Admiralty & Shipping Section, U. S. Dept. of Justice, Civ. Div., Washington, D. C., argued, for appellant; Barbara Allen Babcock, Asst. Atty. Gen., Washington, D. C., Barry A. Short (former U. S. Atty.), St. Louis, Mo., Ronald R. Glancz, Clayton G. Ramsey, Attys., Dept. of Justice, Washington, D. C., on brief.

Lucian Y. Ray of Ray, Robinson, Keenen & Hanninen, Cleveland, Ohio (argued), Joseph A. Murphy of Lucas & Murphy, St. Louis, Mo., on brief, for appellee, Dundee Cement Co.

---

* ALBERT G. SCHATZ, United States District Judge, District of Nebraska, sitting by designation.

Shortly afterwards, Dundee contracted with the Valley Line Supply & Equipment Company (Valley) to remove the barge. High water and the approach of winter delayed the salvage operation until the following summer. By that time the cement had hardened, making the salvage efforts more difficult. Valley succeeded only in rolling the barge onto its starboard side, so that it protruded ten feet above the water surface, and moving the barge closer to the dam, so that it obstructed some of the gates. The barge did not, however, cause any physical damage to the dam.

On August 24, 1973, Valley stopped its unsuccessful operations and left the site. On August 29, 1973, Dundee made a tender of abandonment to the U.S. Army Corps of Engineers, which rejected the tender. Subsequently, the United States engaged Valley, as low bidder, to remove the barge. Removal was completed on June 16, 1976, at a total cost of $341,773.

The Government brought this action in August of 1975 against Federal and Dundee, *in personam,* and the Tom Talbert, *in rem,* to recover the cost of removing the sunken barge. The original complaint asserted claims under 33 U.S.C. §§ 403 and 409.[1] In July of 1976, the Government amended its complaint to assert a claim under 33 U.S.C. § 408[2] against Federal, *in personam,* and the Tom Talbert, *in rem.* In the meantime, Federal and the Tom Talbert, charging that under their contract Dundee had agreed to indemnify Federal, asserted a cross-claim against Dundee.

The court found that none of the defendants were negligent in causing the wreck and therefore dismissed the claim under section 409, which requires proof of negligence. Sections 403 and 408 impose strict liability, but the court found these sections to be inapplicable to the facts of the case. The court interpreted section 408 as requiring structural damage:

> Sec. 408 as written and construed does not apply to the factual situation before this Court. A fair reading of that statute would indicate that the government is seeking to stretch the terms thereof out of any logical shape or framework in an effort to keep Federal, the M/V TOM TALBERT and Dundee as possible sources of recovery for removal costs. The government has not sought damages for injury to Dam 22; it cannot, in fact, seek such damages since the structure was not damaged and the lock and dam remained in continuous operation with no cessation of navigation.

1. 33 U.S.C. § 403 provides in relevant part:
   The creation of any obstruction not affirmatively authorized by Congress, to the navigable capacity of any of the waters of the United States is prohibited; * * * and it shall not be lawful to excavate or fill, or in any manner to alter or modify the course, location, condition, or capacity of * * * the channel of any navigable water of the United States, unless the work has been recommended by the Chief of Engineers and authorized by the Secretary of the Army prior to beginning the same.
   33 U.S.C. § 409 provides in relevant part:
   It shall not be lawful to tie up or anchor vessels or other craft in navigable channels in such a manner as to prevent or obstruct the passage of other vessels or craft; or to voluntarily or carelessly sink, or permit or cause to be sunk, vessels or other craft in navigable channels[.] * * * And whenever a vessel, raft or other craft is wrecked and sunk in a navigable channel, accidentally or otherwise, it shall be the duty of the owner of such sunken craft to immediately mark it with a buoy or beacon during the day and a

lighted lantern at night, and to maintain such marks until the sunken craft is removed or abandoned, and the neglect or failure of the said owner so to do shall be unlawful; and it shall be the duty of the owner of such sunken craft to commence the immediate removal of the same, and prosecute such removal diligently, and failure to do so shall be considered as an abandonment of such craft, and subject the same to removal by the United States as provided for in sections 411 to 416, 418, and 502 of this title.

2. 33 U.S.C. § 408 provides in relevant part:
   It shall not be lawful for any person or persons to take possession of or make use of for any purpose, or build upon, alter, deface, destroy, move, injure, obstruct by fastening vessels thereto or otherwise, or in any manner whatever impair the usefulness of any sea wall, bulkhead, jetty, dike, levee, wharf, pier, or other work built by the United States * * * for the preservation and improvement of any of its navigable waters or to prevent floods * * *.

The court also found section 403 inapplicable, but its reasoning is less clear:

> The provisions of 33 USC 403 are clearly not applicable to the factual situation before the Court, particularly in view of this Court's findings of fact that none of the Defendants were guilty of negligence, nor were their respective vessels unseaworthy in any respect. The cause is one of wreck removal, the costs for recovery of which must properly be considered under, and is controlled by, the provisions of 33 USC 409. *Wyandotte,* supra.

On appeal, the Government challenges the court's dismissal of the strict liability claims.

## II. *The Section 403 Claim.*

In its complaint, the Government charged that the defendants had violated section 403 by creating an obstruction in a channel of navigable water. The Government did not pursue that claim, however. Except for quoting the text of section 403, along with several other provisions of the River and Harbors Act, in its pretrial memorandum, the Government did not mention or argue its claims under that section in either its pretrial memorandum, its proposed findings of fact and conclusions of law, its opening statement at trial, or its argument in response to the defendants' motion to dismiss. Because the Government did not press the section 403 claims in district court, we do not reach the merits of those claims on this appeal but sustain their dismissal solely on the basis that those claims were not in fact litigated in district court.

## III. *The Section 408 Claim Against the Tom Talbert.*

█ Section 408 prohibits any person from injuring, obstructing, or impairing the usefulness of a structure built by the United States for the improvement of navigable waters or flood prevention.[3] Sections 411 and 412 provide criminal and civil penalties for violation of section 408.[4]

The question presented in this case is whether section 408 applies only to physical or structural damage to the dam. The barge caused no physical damage to Lock & Dam # 22. The Government, however, argues that the sunken barge impaired the usefulness of the dam by creating additional turbulence below the dam, thereby endangering vessels attempting to approach the locks from below, and that an impairment of this nature violates section 408.

Federal and the Tom Talbert contend that wreck removal costs cannot be recovered under section 408. They argue that section 409, which applies to wreck removal, and section 408, which applies to structural damage, are mutually exclusive and, because this is a wreck removal case, section 408 cannot apply. They further argue that if we apply section 408 in this wreck removal case we will abrogate section 409, which requires proof of negligence, for the Government could hereafter proceed on a strict liability theory under section 408 in all wreck removal cases.

---

3. The parties do not dispute that Lock & Dam # 22 is a structure covered by § 408.

4. 33 U.S.C. § 411 (1970) provides:

Every person and every corporation that shall violate, or that shall knowingly aid, abet, authorize, or instigate a violation of the provisions of sections 407, 408, and 409 of this title shall be guilty of a misdemeanor, and on conviction thereof shall be punished by a fine not exceeding $2,500 nor less than $500, or by imprisonment (in the case of a natural person) for not less than thirty days nor more than one year, or by both such fine and imprisonment, in the discretion of the court, one-half of said fine to be paid to the person or persons giving information which shall lead to conviction.

33 U.S.C. § 412 (1970) provides in relevant part:

And any boat, vessel, scow, raft, or other craft used or employed in violating any of the provisions of sections 407, 408, and 409 of this title shall be liable for the pecuniary penalties specified in section 411 of this title, and in addition thereto for the amount of the damages done by said boat, vessel, scow, raft, or other craft, which latter sum shall be placed to the credit of the appropriation for the improvement of the harbor or waterway in which the damage occurred, and said boat, vessel, scow, raft, or other craft may be proceeded against summarily by way of libel in any district court of the United States having jurisdiction thereof.

We are convinced that section 408 should be interpreted broadly to cover the type of impairment to the usefulness of the dam alleged in this case.

First, the language of section 408 suggests that it should not be limited to structural damage. The statute lists three groups of prohibited actions, each separated by the conjunction "or": "take possession of or make use of for any purpose, *or* build upon, alter, deface, destroy, move, injure, obstruct by fastening vessels thereto or otherwise, *or* in any manner whatever impair the usefulness * * *." (Emphasis added) The first group involves use and possession; the second involves physical damage; the third involves impairment of the usefulness of the structure. Although physical damage might impair the usefulness of a dam, its usefulness can be impaired in other ways, as alleged in the present case. The language of the statute indicates that it covers such impairments in addition to physical damage.

■ More importantly, our interpretation accords with the purpose of the Rivers and Harbors Act. The purpose of the Act is to protect, preserve, and make safe the Nation's navigable waterways, and the United States is the principal beneficiary of the Act. *Wyandotte Transportation Co. v. United States,* 389 U.S. 191, 201, 88 S.Ct. 379, 19 L.Ed.2d 407 (1967). The Act should be construed broadly to effectuate its goals. *Wyandotte Transportation Co. v. United States, supra; United States v. Republic Steel Corp.,* 362 U.S. 482, 80 S.Ct. 884, 4 L.Ed.2d 903 (1960). Congress imposed strict liability under sections 408 and 412 in order to provide funds for the replacement and maintenance of improvements made by the United States; to interpret those sections in such a way as to limit liability would be inconsistent with the intention of Congress. *United States v. Ohio Valley,* 510 F.2d 1184, 1188 (7th Cir. 1975).

The United States constructs dams for purposes such as flood control and aid to navigation. Any impairment that interferes with those purposes must be corrected by the Corps of Engineers. Expenses incurred in correcting such impairments in order to maintain the usefulness of a dam are recoverable under sections 408 and 412 from the party creating the impairment, regardless whether the impairment is in the nature of physical damage or not.

■ This interpretation of section 408 does not, as suggested by Federal and the Tom Talbert, create an irreconcilable conflict with section 409, relating to wreck removal. Our ruling here permits the use of section 408 only in those rare wreck removal cases in which a wreck, creating an obstruction cognizable under section 409, *also* results in a violation of section 408. That none of the parties have cited any cases in which these two circumstances have occurred together indicates that it is a rare event. In all other wreck removal cases, the Government must still proceed under section 409 and prove negligence.

■ Whether or not the sunken barge impaired the usefulness of the dam is a factual question to be determined by the district court on remand. The Government presented several witnesses from the U.S. Army Corps of Engineers who testified that the presence of the sunken barge increased the turbulence and navigational problems below the dam. Federal argues, with some support from the testimony of the Government witnesses, that the turbulence existed previously and was not caused by the sunken barge. The district court made no finding of fact on this matter, and Federal has not yet put on its evidence.

IV. *The Section 408 Claims Against Federal.*

Section 412 provides that "any boat, vessel, scow, raft, or other craft used or employed in violating any provisions of sections 407, 408 and 409 of this title shall be liable * * * for the amount of the damages done by said boat * * *." The Tom Talbert was the vessel "used or employed" in the alleged violation of section 408. *See United States v. Ohio Valley,* 510 F.2d 1184 (7th Cir. 1975); *United States v. Tug Colette Malloy,* 507 F.2d 1019 (5th Cir.

998

1975); *United States v. M/V Martin,* 313 F.2d 851 (7th Cir. 1963); *Aktieselskabet Dampskib Gansfjord v. United States,* 32 F.2d 236 (5th Cir. 1929); *United States v. The Tug Terry E. Buchanan,* 138 F.Supp. 754 (S.D.N.Y.1956); *United States v. Republic No. 2,* 64 F.Supp. 373 (S.D.Tex.1946). The Government contends that, in addition to the *in rem* remedy expressly provided by section 412, section 408 permits *in personam* recovery against Federal. The district court has not yet addressed this question. We do not now decide whether *in personam* relief is available under section 408, but leave that question to the district court should the Government succeed in establishing its right to recover under section 408.

V. *Conclusion.*

We reverse the dismissal of the section 408 claims against Federal and the M/V Tom Talbert. We remand to the district court for further proceedings on the remaining questions of fact, the question of the availability of *in personam* relief against Federal under section 408, and the cross-claim that Federal as owner of the M/V Tom Talbert has asserted against Dundee as owner of the barge, DDC–12.

Reversed and remanded.