# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-4121

_____

In the Matter of:      *
MO Barge Lines, Inc., a Corporation    *
for Exoneration from or Limitation    *
of Liability,      *
     *
      Plaintiff - Appellee,    *
     *
     *
_____    *
     *
Hopeman Brothers, Inc.,    *
     *
      Intervenor,    *
     *
Joseph Lawrenson; Andrew Bisceglie;   *   Appeals from the United States
Charles B. Jones, Sr.,    *   District Court for the
     *   Eastern District of Missouri.
      Claimants,    *
     *
    v.    *
     *
Belterra Resort Indiana, LLC;    *
Pinnacle Entertainment; New    *
Hampshire Insurance Company,    *
     *
      Claimants - Appellants,    *
     *
Hornblower Marine Services, Inc.;    *
Hornblower Marine Services -    *
Southern Indiana, Inc.,    *
     *
      Claimants.    *

No. 02-4158
_____

| | |
|---|---|
| In the Matter of: | * |
| MO Barge Lines, Inc., a Corporation | * |
| for Exoneration from or Limitation | * |
| of Liability, | * |
| | * |
| Plaintiff - Appellant, | * |
| | * |
| | * |
| _____ | * |
| | * |
| Hopeman Brothers, Inc., | * |
| | * |
| Intervenor, | * |
| | * |
| Joseph Lawrenson; Andrew Bisceglie; | * |
| Charles B. Jones, Sr., | * |
| | * |
| Claimants, | * |
| | * |
| v. | * |
| | * |
| Belterra Resort Indiana, LLC; | * |
| Pinnacle Entertainment; New | * |
| Hampshire Insurance Company, | * |
| | * |
| Claimants - Appellees, | * |
| | * |
| Hornblower Marine Services, Inc., | * |
| | * |
| Claimant, | * |
| | * |
| Hornblower Marine Services - | * |
| Southern Indiana, Inc., | * |

&ast;

&ast;

_____

Submitted:  November 20, 2003

Filed: March 15, 2004 (Corrected: April 13, 2004)
_____

Before BYE, RICHARD S. ARNOLD, and SMITH, Circuit Judges.
_____

SMITH, Circuit Judge.

Belterra Resort Indiana, LLC, Pinnacle Entertainment, Inc., and the New Hampshire Insurance Co. (collectively referred to as "Belterra") brought an admiralty action against the Missouri Barge Lines, Inc. ("Missouri Barge") to recover damages its casino vessel, the *Miss Belterra*, sustained in a collision with Missouri Barge's towboat, the *Elizabeth Ann*, on the Mississippi River. In this interlocutory appeal, Belterra appeals the district court's[1] determination that Missouri Barge is entitled to a limitation of liability for the collision. We affirm.

## I. *Facts*

During the dark early hours of July 31, 2000, the *Miss Belterra*, a new casino vessel heading up the Mississippi River, collided with the *Elizabeth Ann*, a towboat pushing cement barges down the river.  Confusion contributed heavily to the collision. Neal Rich, *Miss Belterra's* pilot, arranged to pass the *Eileen Bigelow*, a large towboat headed upriver, on its one-whistle[2] side. Robert Cummins, pilot of the

_____

[1] The Honorable Catherine D. Perry, United States District Judge for the Eastern District of Missouri.

[2] In the days before marine radios, passing agreements were made using whistles. One whistle blast signified that each vessel would steer to the right and pass

*Elizabeth Ann*, arranged to pass[3] the *Eileen Bigelow* on its two-whistle side. The *Miss Belterra* heard the *Eileen Bigelow*–the vessel nearest it–reach a two-whistle passing agreement with the *Elizabeth Ann*.

During the *Elizabeth Ann* pilot's conversation with the *Eileen Bigelow*, the *Miss Belterra* passed the *Eileen Bigelow*. The *Miss Belterra* waited until the *Eileen Bigelow* and the *Elizabeth Ann* finished their conversation and then Rich made radio contact with the *Elizabeth Ann*. Cummins, believing that he was still communicating with the *Eileen Bigelow*, made what he thought to be a confirmation two-whistle passing agreement with the approaching upward-bound vessel. Unbeknownst to Cummins, he had a second passing agreement, this time with the *Miss Belterra* now further up the river than the *Eileen Bigelow*. Cummins saw *Miss Belterra's* "mass of lights" ahead, but did not recognize them as a ship. Because the *Miss Belterra* had no running lights, Cummins assumed he was approaching a construction site. About this time, Rich realized that the *Elizabeth Ann* was not moving to starboard fast enough. Rich turned to port to avoid collision. However, neither vessel's evasive action succeeded, and they collided causing substantial damage to the *Miss Belterra*.

Belterra sued Missouri Barge in admiralty, alleging that the *Elizabeth Ann's* negligence and failure to adhere to a passing agreement caused the collision and resulting damage to the *Miss Belterra*. The district court found the *Elizabeth Ann* violated several Inland Navigational Rules ("Rules"). 33 U.S.C. §§ 2001–34. The court, after resolving much conflicting testimony, found that the *Miss Belterra*

---

the other on the left, or port side. Two whistles meant that each vessel would steer to the left and pass the other on the right, or starboard side. Mariners still refer to one-whistle or two-whistle passes when they make their agreements.

[3] A passing agreement is a communication made between two approaching vessels whereby they agree in advance on which side of the river each will be when the vessels meet and pass. Today, this communication is usually made by marine radio.

contributed to the collision by not being far enough to the right-descending bank of the river to make the passing. Based on this finding, the court apportioned ninety percent of the fault to Missouri Barge and ten percent to Belterra. Missouri Barge sought–and the court granted–a limitation of liability to Missouri Barge finding that it lacked knowledge or privity of Cummins's negligent piloting.

Belterra now appeals, arguing that the district court erred in granting Missouri Barge's request to limit its liability. Missouri Barge cross-appeals arguing that the district court misinterpreted Rule 14 and that the court's findings that Cummins made a starboard-to-starboard passing agreement with the *Miss Belterra* was clearly erroneous. We first address the cross-appeal because the limitation of liability question only arises if Missouri Barge acted negligently.

## II. *Discussion*
### A. *Inland Navigational Rule 14*

On its cross-appeal, Missouri Barge argues that the district court clearly erred in finding that its pilot, Cummins, violated Rule 14. 33 U.S.C. § 2014. Specifically, Missouri Barge argues that the court erred in finding that Cummins failed to propose the manner of passing or initiate signals to the *Miss Belterra* as required by Rule 14.[4] We disagree and affirm the court's Rule 14 findings.

Rules 14(a) and (d) of the Rules provides in relevant part:

(a) Unless otherwise agreed, when two power-driven vessels are meeting . . . so as to involve risk of collision each shall alter her course to starboard so that each shall pass on the port side of the other.

---

[4]The court found, however, that Cummins agreed to a manner of passing with the *Eileen Bigelow*, but that Cummins was so inattentive that he did not realize that he had also done so with the *Miss Belterra*.

* * *

> (d) Notwithstanding paragraph (a) of this Rule, a power-driven vessel operating on the Great Lakes, Western Rivers, or waters specified by the Secretary, and proceeding downbound with a following current shall have the right-of-way over an upbound vessel, shall propose the manner of passage, and shall initiate the maneuvering signals.

*Id*. We review findings of a district court's bench trial in admiralty cases under a clearly erroneous standard. *McAllister v. United States*, 348 U.S. 19, 20 (1954); *Lone Star Indus., Inc. v. Mays Towing Co., Inc.*, 927 F.2d 1453, 1456 (8th Cir. 1991). A finding of negligence in admiralty is a finding of fact, and we will not set aside the judgment unless it is clearly erroneous. *Id*. However, we review the district court's conclusions of law de novo. *Union Pac. R. R. v. Kirby Inland Marine, Inc.*, 296 F.3d 671, 674 (8th Cir. 2002).

Relying on *Marine Trans. Lines v. M/V Tako Invader*, Missouri Barge interprets Rule 14 to require vessels to proceed up and down the Mississippi River starboard to starboard *unless* the downward vessels agree otherwise. 37 F.3d 1138, 1144–45 (5th Cir. 1994) (emphasis added). The court in *Marine Trans. Lines* interpreted Rule 14(d) to modify Rule 14(a) giving a downbound vessel on the Mississippi River the authority to depart from the default requirement of a port-to-port passing, provided she complies with the requirements of Rule 14(d), which require her to propose the manner of passage and initiate maneuvering signals. *Id.* at 1145.

Missouri Barge interprets Rule 14(d) to be an option to 14(a) rather than a requirement of its vessels traveling on the Mississippi River. We disagree. The plain language of 14(d), regardless of the custom of the industry, clearly trumps the default rule of 14(a). Thus, a downward vessel on the Mississippi River is *required* to

propose (to an approaching vessel) the manner of passage and initiate the maneuvering signals that will be used. The statutory language is straightforward, and we uphold the district court's interpretation of Rule 14.

Testimony presented at trial demonstrated that Cummins had piloted ships on the relevant stretch of the Mississippi River for over six years without an accident. However, on this occasion, inattention marred that record. Cummins unwittingly agreed to two starboard-to-starboard meetings, one with the *Miss Belterra* and the other with the *Eileen Bigelow*. Cummins did not move his vessel when he saw the "mass of lights" coming from the *Miss Belterra* because he thought the lights were from a construction site on the dikes. He assumed that the second radio communication was only the *Eileen Bigelow* calling to reconfirm their passing arrangement and was unaware that it was actually the *Miss Belterra,* which had already passed the *Eileen Bigelow*. The district court did not clearly err in finding that Cummins was in violation of Rule 14(d) by failing to propose the manner of passage or initiate the maneuvering signals to the *Miss Belterra*. Accordingly, we affirm the district court's findings as to Rule 14.

B. *Limitation of Liability*

Belterra contends the district court erred by granting Missouri Barge limited liability under the Limitations of Liability Act. 46 U.S.C. § 181, *et seq.* Section 183(a) of the Act allows a vessel owner to limit its liability, to the value of the owner's interest in the vessel and its pending freight, in circumstances where an injury or loss occurs, without the shipowner's privity or knowledge. *Universal Towing Co. v. Barrale*, 595 F.2d 414, 417 (8th Cir. 1979). An owner seeking to invoke the Act must petition the district court for a limitation of liability and must deposit with the court an amount equal to the value of his interest in the vessel and its freight or give security for such value. Congress intended the Act to encourage investment in the American shipping industry. *Barrale*, 595 F.2d at 417 n.3.

Section 183(a) of the Limitation of Liability Act provides in relevant part:

> The liability of the owner of any vessel . . . for any loss, damage, or injury by collision . . . incurred, without the privity or knowledge of such owner or owners, shall not . . . exceed the amount or value of the interest of such owner in such vessel, and her freight then pending.

46 U.S.C. § 183(a). To determine an owner's entitlement to limit its damages, a court must engage in a two-part analysis. The court must determine (1) whether negligence or unseaworthiness caused the accident, and (2) whether the shipowner was privy to, or had knowledge of, the causative agent. *Carr v. PMS Fishing Corp.*, 191 F.3d 1, 4 (1st Cir. 1999); *Cupit v. McClanathan Contractors, Inc.*, 1 F.3d 346, 348 (5th Cir. 1993); *Mac Towing, Inc. v. American Commercial Lines*, 670 F.2d 543, 548 (5th Cir. 1982) ("Errors in navigation or other negligence by master or crew are not attributable to [the shipowner] for limitation purposes.").

Privity generally means some personal participation of the owner in the fault or negligence that caused or contributed to the loss or injury. *Coryell v. Phipps*, 317 U.S. 406, 411 (1943). The owner's duty is essentially satisfied when he properly equips the vessel and selects competent crew to operate it. *United States v. Atl. Mut. Ins. Co.*, 343 U.S. 236, 246–47 (1952) (holding that if a shipowner exercises due diligence to make the vessel in all respects seaworthy, and properly manned, equipped, and supplied, neither the vessel, nor her owner or owners are responsible for damage or loss resulting from faults or errors in navigation or in the management of the vessel).[5]

---

[5] The theory supporting liability limitation, when a master commits navigational errors, is two-fold. First, when the owner exercises due care in selecting the master, he discharges his obligations, and he may thereafter rely on the master's skill and expertise. Second, when the owner is so far removed from the vessel that he can exert no control over the master's actions, he should not be taxed with the master's negligence. *Continental Oil Co. v. Bonanza Corp.*, 706 F.2d 1365, 1377

Belterra argues that the district court erred in concluding Missouri Barge lacked privity and knowledge of Cummins's violation of Rule 14. Specifically, Belterra argues that Missouri Barge's privity and knowledge of Cummins's violations are evident in Missouri Barge's policy of allowing its river pilots to proceed down the Mississippi River without signaling their intentions in conformity with Rule 14. We disagree and affirm the district court.

The record supports the district court's finding that Missouri Barge hired a licensed, competent operator to navigate its vessel on the Mississippi River. Cummins had been accident free for seven years and had complied with the Rules, even though Missouri Barge failed to explicitly advise Cummins that he was required to follow the Rules. Also, the pilot test administered by Missouri Barge follows the same statutory interpretation of Rule 14 used by the district court. Belterra produced no evidence showing that Missouri Barge could be charged with notice that Cummins would operate the vessel negligently.

Lastly, Belterra argues that Missouri Barge's *Elizabeth Ann* was unseaworthy. Belterra contends when a collision is caused in part by a vessel pilot's failure to make appropriate use of available radar equipment, the shipowner is deemed to have privity and knowledge of the cause as a matter of law. Specifically, Belterra contends that had Cummins been properly trained in the operation of the vessel's radar the accident would not have occurred. We find this argument unpersuasive.

The principal authority on which Belterra relies, *Complaint of Waterstand Marine*, 1991 AMC 1784, 1799 (E.D. Pa. 1988), is readily distinguishable. In *Waterstand*, the court found that a pilot's inability to operate an Automatic Radar Plotting Aid rendered him incompetent, and the shipowner's failure to train the captain on how to use the equipment rendered him liable for the damages on sea. *Id.*

(1983) (quoting *G. Gilmore & C. Black, The Law of Admiralty* 877 (2d ed. 1975)).

The *Waterstand* court also concluded that the incident was not navigational error, but rather an example of unseaworthiness, therefore disqualifying the shipowner from the protection of limited liability. *Id.* In contrast, here, pilot negligence caused the collision. Cummins testified that he thought it useless to increase the radar's range to identify the approaching "mass of lights." Cummins assumed that due to the presence of a sand bar between the *Elizabeth Ann* and the "mass of lights," the radar would be in effective. Cummins mistakenly relied on his ability to use binoculars to visually identify the lights approaching his vessel. The court did not find that Cummins was unable to operate the radar, but rather that he made a decision not to increase the radar range. The record supports the district court's finding that Cummins's decision not to increase his radar's range when he first noticed the lights was navigational error rather than an example of unseaworthiness.

## III.

For the foregoing reasons, we affirm the decision of the district court.

_____