# United States Court of Appeals

## For the Eighth Circuit

_____

No. 14-1867

_____

In re: American River Transportation Company, for Exoneration from, or
Limitation of, Liability

*Plaintiff - In re:*

------------------------------

American River Transportation Company

*Plaintiff - Appellant*

v.

United States of America, Corps of Engineers

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: April 14, 2015
Filed: August 25, 2015

_____

Before RILEY, Chief Judge, WOLLMAN and MELLOY, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

This case comes to us on appeal a second time after the district court *sua sponte* dismissed the limitation action brought by the American River Transportation Company (Artco), concluding that the limitation proceeding could not go forward because the United States' potential claims were not subject to the Limitation of Shipowners' Liability Act, 46 U.S.C. §§ 30501-30512 (the Limitation Act). The district court declined to hold the United States in contempt for violating the court's order enjoining suits outside the limitation proceeding. We reverse the court's dismissal of Artco's limitation action, affirm its denial of Artco's motion to hold the government in contempt and for sanctions, vacate the district court's order as to the remaining motions, and remand for further proceedings.

I.

This dispute arises from damage done to the government's lock and dam after barges separated from the M/V Julie White, a towboat owned by Artco, and allided with the lock and dam and appurtenant structures. The government informed Artco of the damage, and, in accordance with Federal Rule of Civil Procedure F (Rule F), Artco commenced this action under the Limitation Act in the Eastern District of Missouri, seeking limitation of its liability to the government or exoneration for the government's damages.

The district court issued an order enjoining the prosecution of any separate suits "whatsoever" against Artco or the vessel at issue "in respect of any claim arising out of or connected to" the allision and directing potential claimants to file claims by June 15, 2011. Before the time for filing claims had expired, the government filed a motion to dismiss Artco's complaint, arguing that the government's claim alleging a violation of the Rivers and Harbors Act (RHA), 33 U.S.C. § 408, was not subject to limited liability and therefore need not be litigated in the Rule F proceeding. The government never filed a timely claim in the limitation proceeding. The district court granted the motion to dismiss, holding that the government's potential § 408 claim

-2-

was not subject to the Limitation Act and that the government could pursue it in a separate proceeding *in personam*. The district court then dismissed Artco's limitation action in its entirety.

Artco appealed, and we held in In re American River Transportation Co. (Artco I), 728 F.3d 839 (8th Cir. 2013), that because the government never filed a claim in the Rule F proceeding, it lacked statutory standing to move to dismiss Artco's limitation action. We reversed the district court's dismissal of Artco's limitation action on that basis and remanded the case. We did not address whether the government's claim was subject to limited liability under the Limitation Act or whether the government could pursue an *in personam* remedy.

On remand, the parties filed four new motions. Artco filed a motion for a final decree of exoneration based on the government's failure to file a claim and the lack of any other claims in the limitation action. The government moved for permission to file a late claim in the limitation proceeding. The government also initiated a new and separate proceeding based on the same incident, filing a complaint against Artco in the Eastern District of Missouri that alleged claims under the RHA, 33 U.S.C. §§ 408-409. See United States v. Am. River Transp. Co., No. 4:14-cv-00050-AGF (E.D. Mo. filed Jan. 13, 2014). In response, Artco filed in the limitation proceeding a motion to impose sanctions and to hold the government in contempt for violating the district court's injunction against the prosecution of separate suits. The government then filed a motion to consolidate the actions.

The district court disposed of all four motions in a single order. It denied Artco's motion for a decree of exoneration, stating that we had left intact its prior holding that the government's claims were not subject to limited liability under the Limitation Act and that the government could pursue an *in personam* remedy for its § 408 claim. The court concluded that its prior injunction had been overbroad and therefore denied Artco's motion to hold the government in contempt, to impose

sanctions, and to direct dismissal of the government's separate suit. As there were no claims filed against Artco in the limitation action, the court denied the government's motion for leave to file a late claim, denied as moot the government's motion to consolidate, and directed dismissal of the limitation action.

Artco appeals, arguing that the government's claim under § 408 of the RHA is subject to the Limitation Act, that the district court's dismissal of its limitation action is contrary to our holding in Artco I, that an absence of claims in a limitation action does not justify dismissal of the action but rather should result in exoneration or default judgment, and that the district court erred in refusing to hold the government in contempt and to impose sanctions for violating the injunction.

II.

"Congress passed the Limitation Act in 1851 'to encourage ship-building and to induce capitalists to invest money in this branch of the industry.'" Lewis v. Lewis & Clark Marine, Inc., 531 U.S. 438, 446 (2001) (quoting Norwich & N.Y. Transp. Co. v. Wright, 80 U.S. (13 Wall.) 104, 121 (1871)). The Limitation Act limits vessel owners' liability for damage or injury to the value of the vessel and its freight, as long as the damage or injury occurs without the owner's privity or knowledge. 46 U.S.C. § 30505. The Limitation Act provides:

> (a) . . . . [T]he Liability of the owner of a vessel for any claim, debt, or liability described in subsection (b) shall not exceed the value of the vessel and pending freight.

> (b) . . . . Unless otherwise excluded by law, claims, debts, and liabilities subject to limitation under subsection (a) are those arising from any embezzlement, loss, or destruction of any property, goods, or merchandise shipped or put on board the vessel, any loss, damage, or injury by collision, or any act, matter, or thing, loss, damage, or

forfeiture, done, occasioned, or incurred, without the privity or knowledge of the owner.

Id.

The Limitation Act, in conjunction with Rule F, also allows vessel owners, within six months of receiving written notice of a claim, to commence a limitation action to have multiple related claims against them disposed of in a concursus, through a single proceeding. 46 U.S.C. § 30511; Fed. R. Civ. P. Supp. R. F. The court presiding over the limitation proceeding fixes a date for filing claims and issues a concursus injunction to enjoin the prosecution of "any action or proceeding against the plaintiff or the plaintiff's property with respect to any claim subject to limitation in the action." See Fed. R. Civ. P. Supp. R. F(3)-(4). The concursus procedure helps "to ensure the prompt and economical disposition of controversies in which there are often a multitude of claimants." Md. Cas. Co. v. Cushing, 347 U.S. 409, 415 (1954) (plurality opinion).

The government argues that its RHA claim under § 408 is not subject to the Limitation Act. Section 408 states, in pertinent part, "It shall not be lawful for any person or persons to . . . injure . . . or in any manner whatever impair the usefulness of any . . . work built by the United States . . . for the preservation and improvement of any of its navigable waters . . . ." 33 U.S.C. § 408. It thus imposes strict liability on vessel owners whose vessels impair or injure public works on navigable waters. United States v. Fed. Barge Lines, Inc., 573 F.2d 993, 997 (8th Cir. 1978); United States v. Ohio Valley Co., 510 F.2d 1184, 1186 (7th Cir. 1975).

We review *de novo* the question at the center of this appeal: whether § 408 implicitly repealed the Limitation Act, such that a claim under § 408 is not subject to the limitations of liability set forth above. See Highmark Inc. v. Allcare Health

Mgmt. Sys., Inc., 134 S. Ct. 1744, 1748 (2014) ("[Q]uestions of law are reviewable *de novo* . . . ." (internal quotations omitted)).

The repeal of statutes by implication is not favored. Morton v. Mancari, 417 U.S. 535, 549 (1974). "A new statute will not be read as wholly or even partially amending a prior one unless there exists a 'positive repugnancy' between the provisions of the new and those of the old that cannot be reconciled." Blanchette v. Conn. Gen. Ins. Corps., 419 U.S. 102, 134 (1974) (quoting In re Penn Cent. Transp. Co., 384 F. Supp. 895, 943 (Reg'l Rail Reorg. Ct. 1974)). "[W]here provisions in the two acts are in irreconcilable conflict, the later act to the extent of the conflict constitutes an implied repeal of the earlier one . . . ." Radzanower v. Touche Ross & Co., 426 U.S. 148, 154 (1976) (quoting Posadas v. Nat'l City Bank of N.Y., 296 U.S. 497, 503 (1936)). "[W]hen two statutes are capable of co-existence," however, "it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective." Morton, 417 U.S. at 551. "[T]he rule is to give effect to both if possible." Id. (quoting United States v. Borden Co., 308 U.S. 188, 198 (1939)).

The parties dispute whether there is an irreconcilable conflict between the Limitation Act and § 408. Artco contends that there is nothing inherently conflicting between a statute that provides a cause of action and another that limits it. Artco argues that only an *in rem* remedy is available for violations of § 408 and that therefore the limitations on liability built into the RHA and Limitation Act are consistent. The government argues that it may pursue an *in personam* remedy for violations of § 408 and that § 408 is therefore in irreconcilable conflict with the Limitation Act, which limits damages to the value of the vessel and its freight. The government notes that a vessel owner has six months to initiate a limitation action after receiving a claim in writing, whereas the government has three years to bring suit under the RHA. Finally, the government points to the conflicting nature of the competing objectives of the two acts and their differing standards of liability.

A.

The RHA does not explicitly provide for an *in personam* cause of action for violations of § 408. Instead, it specifically provides for fines of up to $25,000 per day against the vessel's owner under § 411, and an *in rem* remedy against the vessel to recover damages under § 412, which states that

> any [vessel] used or employed in violating any of the provisions of sections 407, 408, 409, 414, and 415 of this title shall be liable for the pecuniary penalties . . . and in addition thereto for the amount of the damages done by said [vessel] . . . and said [vessel] may be proceeded against . . . by way of libel in any district court of the United States having jurisdiction thereof.

33 U.S.C. § 412. The government contends that, in addition to the express *in rem* cause of action against the offending vessel for violations of § 408, it has an implicit *in personam* cause of action against the vessel owner.

In support of its argument, the government relies primarily on <u>Wyandotte Transportation Co. v. United States</u>, 389 U.S. 191 (1967), in which the Supreme Court held that an implicit *in personam* remedy was available for violations of another provision of the RHA, § 409. At that time, § 409 made it unlawful to "voluntarily or carelessly sink, or permit or cause to be sunk, vessels . . . in navigable channels" and made it the duty of the vessel owner to "commence the immediate removal" of a sunken vessel. 33 U.S.C. § 409 (1964) (amended 1986). In <u>Wyandotte</u>, the United States brought an action for a declaratory judgment that certain vessel owners must remove their sunken vessels, as well as a claim *in personam* to recover the significant costs it incurred in removing a sunken barge loaded with 2.2 million pounds of chlorine. 389 U.S. at 194-96. The Court cited <u>Texas & Pacific Railway Co. v. Rigsby</u>, 241 U.S. 33 (1916), and <u>J. I. Case Co. v. Borak</u>, 377 U.S. 426 (1964), for the proposition that it is proper for courts to fashion

-7-

an appropriate remedy if criminal liability is inadequate to ensure full effectiveness of a statute, the interest of the plaintiff falls within the class the statute was intended to protect, and the plaintiff's harm is of the type the statute was intended to remedy. Wyandotte, 389 U.S. at 202-03. Applying this same reasoning to the facts of Wyandotte, the Court held that because § 409 placed the duty to remove negligently sunken vessels on the vessel owner principally for the benefit the government, because the penalties were insufficient to effectuate the purposes of § 409, and because the express *in rem* remedy was insufficient to fully compensate the government for performing the vessel owner's duty, the Court would infer the existence of an *in personam* remedy and declaratory relief. See id. at 201-05.[1] The Court noted that "[i]t would be surprising if Congress intended that, in such a situation, the Government's commendable performance of [the vessel owner's] duty must be at Government expense." Id. at 204-05.

We have heretofore not decided whether Wyandotte should be extended to allow the government to maintain an *in personam* cause of action for a violation of § 408. Post-Wyandotte, the Supreme Court has altered its statutory-interpretation analysis and its approach to implying the existence of remedies that Congress has not expressly created. The Court's retreat from implying remedies in accordance with the principles laid out in Rigsby, Borak, and Wyandotte cautions against simply extending Wyandotte by analogy and reading an *in personam* cause of action into § 408. See Corr. Servs. Corp. v. Malesko, 534 U.S. 61, 67 n.3 (2001) ("Since our decision in Borak, we have retreated from our previous willingness to imply a cause of action where Congress has not provided one."); Merrill Lynch, Pierce, Fenner &

---

[1]The Court also noted that allowing a *negligent* vessel owner to limit its liability to be exclusively *in rem* would be inconsistent with the Limitation Act, whose "privity or knowledge" standard prevents vessel owners from limiting their liability when they are at fault because of their own negligence. Wyandotte, 389 U.S. at 205-06. But the Court expressly declined to determine whether the Limitation Act's limitation of liability would apply to a § 409 claim. Id. at 205 n.17.

Smith, Inc. v. Curran, 456 U.S. 353, 377 (1982) (chronicling the Court's departure from the principles laid out in Rigsby); Touche Ross & Co. v. Redington, 442 U.S. 560, 578 (1979) ("[I]n a series of cases since Borak we have adhered to a stricter standard for the implication of private causes of action . . . .").

A search for congressional intent has become the primary focus in determining whether a statute includes an implied remedy, with the statute's text and structure being the starting point of the court's inquiry. Alexander v. Sandoval, 532 U.S. 275, 286-88 (2001). "[W]here a statute expressly provides a remedy, courts must be especially reluctant to provide additional remedies. In such cases, '[i]n the absence of strong indicia of contrary congressional intent, we are compelled to conclude that Congress provided precisely the remedies it considered appropriate.'" Karahalios v. Nat'l Fed'n of Fed. Emps., Local 1263, 489 U.S. 527, 532-33 (1989) (second alteration in original) (internal citation omitted) (quoting Middlesex Cnty. Sewerage Auth. v. Sea Clammers, 453 U.S. 1, 15 (1981)).

There is disagreement among the circuits regarding whether there is an implied *in personam* remedy for violations of § 408. The Sixth Circuit held in Hines, Inc. v. United States, 551 F.2d 717 (1977), that the government could pursue an *in personam* remedy for violations of § 408. The outcome in Hines depended on the court's conclusion that the "legal logic" the Supreme Court used to interpret § 409 in Wyandotte was equally applicable to § 408. Id. at 724. Yet, as explained above, the Court has abandoned the interpretive logic that it employed in Wyandotte, and we see no reason why we should apply it to our analysis of § 408 merely because § 408 and § 409 are part of the same act. See Sandoval, 532 U.S. at 287 ("Not even when interpreting the same [act] that was at issue in Borak have we applied Borak's method for discerning and defining causes of action.").

Furthermore, the Sixth Circuit in Hines suggested that § 408, which imposes strict liability, was even more likely to include an implied *in personam* remedy than

§ 409, then a negligence-based liability provision.[2]  See 551 F.2d at 724.  Yet Wyandotte relied on § 409's then-negligence standard as support for inferring an implied *in personam* cause of action.  See 389 U.S. at 204-05; supra note 1.  We do not agree that § 408's strict liability standard makes it any more likely, under the Wyandotte Court's now-disfavored reasoning, that Congress intended to provide an *in personam* remedy. To the contrary, § 408's strict liability standard renders much of Wyandotte's reasoning inapplicable.

We find more persuasive the opinions of the Fifth and Tenth Circuits, which have held that only an *in rem* remedy is available for violations of § 408.  See United States v. Jantran, Inc., 782 F.3d 1177 (10th Cir. 2015); In re Barnacle Marine Mgmt. Inc., 233 F.3d 865 (5th Cir. 2000).  As both circuits note, the Wyandotte Court emphasized the duty-creating language of § 409 in inferring the existence of an *in personam* remedy. Jantran, 782 F.3d at 1182; Barnacle, 233 F.3d at 870.  Such language is absent from § 408.  Without the duty-creating language, there is no "textual hook" that could serve as a strong indicia of congressional intent to imply an *in personam* cause of action.  Jantran, 782 F.3d at 1182.

Furthermore, like the Tenth Circuit in Jantran, we decline to adopt the government's position that we should be particularly willing to infer the existence of a remedy that benefits the government rather than private parties.  See id. at 1183. The argument that the costs of repairing public works damaged by vessels should fall on the vessels' owners rather than taxpayers is one better addressed to Congress, and the government has pointed to no persuasive indication of any implied congressional intent that an *in personam* remedy exist for violations of § 408.  We also reject the government's contention that it follows from the identical introductory language of § 408 and § 409—"It shall not be lawful"—that § 408 contains the same implied

---

[2]Congress later amended the statute's language and removed the negligence standard from § 409.  See Pub. L. 99-662, § 939(a), 100 Stat. 4082, 4199 (1986).

-10-

remedies that the <u>Wyandotte</u> Court read into § 409. "Such a reading would require us to . . . base our analysis on what is, essentially, a boilerplate introduction." <u>Jantran</u>, 782 F.3d at 1183.

The government argues that denying it an *in personam* remedy for its § 408 claim will frustrate Congress's goal of "provid[ing] funds for the replacement and maintenance of improvements made by the United States." <u>United States v. Fed. Barge Lines, Inc.</u>, 573 F.2d 993, 997 (8th Cir. 1978). But the overall purpose of the RHA is not, in itself, a strong indicia of Congress's intent to provide an *in personam* remedy. It is not for us to re-craft the RHA to better effectuate Congress's goals while ignoring its express choice of remedies. <u>Cf.</u> <u>In re Cavanaugh</u>, 306 F.3d 726, 731-32 (9th Cir. 2002) ("Congress enacts statutes, not purposes, and courts may not depart from the statutory text because they believe some other arrangement would better serve the legislative goals."). The RHA expressly provides for an *in rem* remedy in § 412 and penalties in § 411. In the absence of strong indicia that Congress intended to provide an *in personam* remedy, we decline to impose one by judicial fiat.

We thus turn to the interaction between the Limitation Act and the RHA and the question whether the *in rem* remedy Congress provided for violations of § 408 conflicts with the Limitation Act. As a threshold issue, it has been suggested that a claim *in rem* by its very nature simply falls outside the coverage of the Limitation Act because it is a claim against the vessel itself and therefore does not concern "liability of the owner of a vessel" within the plain meaning of 46 U.S.C. § 30505. See <u>Artco I</u>, 728 F.3d at 845 n.2 (Riley, C.J., dissenting) (noting that the Limitation Act limits only the *in personam* liability of the owner of a vessel); <u>Ohio Valley</u>, 510 F.2d at 1188-89 (same); <u>see also</u> <u>Tug Allie-B, Inc. v. United States</u>, 273 F.3d 936, 955 n.6 (11th Cir. 2001) (Black, J., concurring) ("I have difficulty understanding how the

-11-

Limitation Act could apply to a proceeding *in rem*, as the statute explicitly applies solely to "the *owner* of any vessel.").[3]

We disagree. Although the Limitation Act speaks in terms of the "liability of the owner of a vessel for any claim, debt, or liability," in all practical senses a successful suit *in rem* results in the vessel owner's liability via the deprivation of the owner's property. See Place v. Norwich & N.Y. Transp. Co., 118 U.S. 468, 503 (1886) ("A man's liability for a demand against him is measured by the amount of property that may be taken from him to satisfy that demand. In the matter of liability, a man and his property cannot be separated."). The Supreme Court has repeatedly stated that the Limitation Act applies to proceedings *in rem* against ships as well as to proceedings *in personam* against vessel owners and that the limitation extends to vessel owners' property as well as to their persons. See Just v. Chambers, 312 U.S. 383, 386 (1941); Hartford Accident & Indem. Co. v. S. Pac. Co., 273 U.S. 207, 215-16 (1927); Place, 118 U.S. at 502-04. Although the limitations of liability available under the Limitation Act may rarely have practical effect when there is only a single claimant asserting a claim *in rem*, the vessel owner may still benefit from the protections of the Limitation Act and the concursus procedure when there are multiple claimants. The text of Rule F, which states that the concursus injunction shall cover "any action or proceeding against the plaintiff *or the plaintiff's property* with respect to any claim subject to limitation in the action," confirms our

_____

[3]The government has not emphasized this point. Indeed, it would be inconsistent to argue both that a provision is in conflict with the Limitation Act's limits on liability because it gives rise to a claim *in personam* and that a claim *in rem* is never subject to the Limitation Act. The circuits' views on this matter reflect this contradiction. Compare Tug Allie-B, 273 F.3d at 944, 946 n.12 (concluding that the availability of an *in personam* remedy under a later-enacted statute places it in conflict with the Limitation Act), with Ohio Valley, 510 F.2d at 1188-89 (stating that the Limitation Act applies only to claims *in personam*).

-12-

interpretation. Fed. R. Civ. P. Supp. R. F(3). In sum, then, claims *in rem* can be subject to the Limitation Act.

Having determined that claims *in rem* can be subject to the Limitation Act, there is no remaining source of conflict between the Limitation Act and Congress's choice of remedy for § 408 claims under the RHA. The *in rem* remedy inherently limits recovery for violations of § 408 to the value of the property, which is consistent with the Limitation Act's standard limiting a vessel owner's liability to the value of the ship and its freight.

B.

A vessel owner may obtain limitation of liability under the Limitation Act only if the injury or loss occurs without the owner's "privity or knowledge." 46 U.S.C. § 30505. The government argues that the privity-or-knowledge element is in irreconcilable conflict with the strict liability standard imposed by § 408 because negligence, unseaworthiness, and culpability are concepts foreign to the imposition of strict liability. Artco counters that the differing standards of culpability are reconcilable; the test for determining whether a claimant can establish liability will simply be different from the test for determining whether the vessel owner is entitled to limitation of liability. We agree with Artco that there is no inherent repugnancy between § 408's strict liability standard and the Limitation Act.

Generally, determining whether there is privity or knowledge requires a two-step inquiry: first, whether negligence or unseaworthiness caused the accident; and second, if so, whether the vessel owner was privy to, or had knowledge of, that causative agent. In re MO Barge Lines, Inc., 360 F.3d 885, 890 (8th Cir. 2004). "Privity generally means some personal participation of the owner in the fault or negligence that caused or contributed to the loss or injury." Id. at 890-91 (citing Coryell v. Phipps, 317 U.S. 406, 411 (1943)). The modern trend is to interpret

-13-

"privity or knowledge" for purposes of the Limitation Act as including constructive knowledge—*i.e.*, knowledge exists if the vessel owner could have discovered the causative agent through reasonable inquiry. See Suzuki of Orange Park, Inc. v. Shubert, 86 F.3d 1060, 1064 (11th Cir. 1996) (listing cases).

It is true that the Limitation Act typically applies to claims founded on a negligence theory. Tug Allie-B, 273 F.3d at 943. But the government points to nothing in the language or history of the Limitation Act that limits its application to claims involving a standard of reasonable care. Nor does the case law support the government's view. For example, courts apply the Limitation Act to claims of unseaworthiness, which are essentially strict liability claims. See Yamaha Motor Corp., U.S.A. v. Calhoun, 516 U.S. 199, 207-08 (1996) ("[A] series of th[e] Court's decisions transformed the maritime doctrine of unseaworthiness into a strict-liability rule."). Nevertheless, in evaluating whether a vessel owner's privity or knowledge precludes limitation in a claim of unseaworthiness, courts generally look to whether the owner exercised reasonable diligence with respect to the unseaworthy condition. E.g., Brister v. A.W.I., Inc., 946 F.2d 350, 356 (5th Cir. 1991). Thus, there is no requirement that the culpability standard in the privity-or-knowledge element be congruent with the culpability standard for liability. The fact that assessing privity or knowledge will require factfinders to identify the causative agent and then determine the vessel owner's culpability as to that causative agent—extra steps that may otherwise be unnecessary in a § 408 claim—does not place the Limitation Act and § 408 in irreconcilable conflict.

C.

The government argues that the Limitation Act and § 408 are irreconcilable because a vessel owner has six months to initiate a limitation proceeding under the Limitation Act, see 46 U.S.C. § 30511(a), while the statute of limitations for a § 408

-14-

claim is three years, see 28 U.S.C. § 2415(b).[4]  We do not agree.  The six-month window for a vessel owner to initiate a limitation action commences after the owner receives written notice of a claim, not six months after the occurrence of the accident. See 46 U.S.C. § 30511(a).  It is thus possible for the filing period in a limitation action to be even longer than the three-year limitations period under § 408, depending on when the allegedly injured party gives notice of its claim.  Moreover, many maritime claims, such as personal injury claims under the Jones Act, are subject to the Limitation Act, e.g., In re E. River Towing Co., 266 U.S. 355, 366-68 (1924) (holding that Jones Act claims are subject to the Limitation Act), despite having a three-year statute of limitations, see 46 U.S.C. §§ 30104, 30106; 45 U.S.C. § 56.  Thus, subjecting the government's § 408 claim to the Limitation Act's six-month filing period simply puts the government in the same position as others whose claims courts have already held are subject to the Limitation Act.

Because the available remedies, liability standard, and statute of limitations for § 408 claims can be reconciled with the Limitation Act, we conclude that the Limitation Act has not been implicitly repealed with respect to § 408.  The government's § 408 claim is thus subject to limitation of liability and the limitation proceeding prescribed by the Limitation Act and Rule F.

III.

The government argues that regardless of whether its § 408 claim is subject to the Limitation Act, it is the only potential claimant in the limitation action and therefore the district court properly dismissed the action.

---

[4]Artco does not dispute that the three-year statute of limitations in 28 U.S.C. § 2415(b) applies to the government's § 408 claim.

The doctrine invoked by the government, first set forth by the Supreme Court in <u>Langnes v. Green</u>, 282 U.S. 531, 539-44 (1931), allows the district court to dissolve or relax a concursus injunction in a limitation proceeding in certain situations. The central aim of the Limitation Act and limitation proceedings is to provide a right to limitation of a vessel owner's liability and to apportion the limitation fund among multiple claimants. <u>See</u> <u>Lake Tankers Corp. v. Henn</u>, 354 U.S. 147, 152 (1957). Yet in the saving-to-suitors clause, Congress reserved claimants' choice of remedies—such as common-law remedies—and their right to pursue them in state court where they may, for example, obtain a jury trial. <u>Id.</u> at 153 (citing 28 U.S.C. § 1333). To ensure harmony between the Limitation Act and the saving-to-suitors clause, courts permit claimants to pursue their claims outside of the limitation proceeding in two situations: where there is a single claimant, or where the total claims do not exceed the value of the limitation fund. <u>Lewis</u>, 531 U.S. at 451. To satisfy themselves that a vessel owner's right to limitation will be protected, district courts may obtain from claimants stipulations that their damages will not exceed the limitation fund and waivers of claims of *res judicata* concerning issues bearing on limitation of liability. <u>Id.</u> at 453-54. As long as the vessel owner's right to limited liability will not be jeopardized, the court has discretion to dissolve or modify a concursus injunction to give claimants the right to pursue their claims in state court.[5] <u>See</u> <u>id.</u> at 454; <u>Lake Tankers</u>, 354 U.S. at 153-54. On the other hand, "[i]f the district court concludes that the vessel owner's right to limitation will not be adequately protected—where for example a group of claimants cannot agree on appropriate stipulations or there is uncertainty concerning the adequacy of the fund or the number of claims—the court may proceed to adjudicate the merits, deciding the issues of liability and limitation." <u>Lewis</u>, 531 U.S. at 454.

_____

[5]Although the decision has been described as one of discretion, in certain circumstances a district court's failure to dissolve the injunction constitutes an abuse of discretion. <u>See</u> <u>Valley Line Co. v. Ryan</u>, 771 F.2d 366, 372-73 (8th Cir. 1985).

The concerns that led to the development of the foregoing doctrine—the right of claimants to pursue their choice of remedies in their chosen forum and the right to a jury trial, if desired—do not appear to be at issue here. The government urges us to hold that it is entitled to pursue its admiralty claim in a separate proceeding in the same federal district in which Artco filed the limitation proceeding. Some courts have given the Supreme Court's cases on the doctrine a broad reading and have held that it is not founded solely in the saving-to-suitors clause and that it protects claimants' rights not only to assert common-law rights in state courts, but also to assert other rights elsewhere, including in other federal courts. See Inland Dredging v. Sanchez, 468 F.3d 864, 864-68 (5th Cir. 2006); Kreta Shipping, S.A. v. Preussage Int'l Steel Corp., 192 F.3d 41, 48-50 (2d Cir. 1999). But even under such an interpretation, it is not clear that the doctrine should apply here, where the government asserts claims in admiralty, without a jury demand, in the same federal district in which the limitation proceeding is ongoing.

Even assuming that the doctrine applies to the facts at hand, however, the district court did not follow the procedures ordinarily employed to protect a vessel owner's right to limitation of liability. The court made no effort to ensure that Artco's right to limitation would be protected and in fact concluded that Artco had no such right.[6] Most importantly, the district court explicitly said that it was dismissing Artco's action because the government's claim was not subject to the Limitation Act, not because there was a single potential claimant or because the claims would not exceed the limitation fund. The government did not ask to have the injunction dissolved or relaxed in order to pursue its separate claims; to the contrary, it moved to consolidate this action with the other. The district court therefore did not exercise its discretion under the doctrine, but rather dismissed the action for an entirely different reason. We decline to affirm the dismissal on an alternative ground

---

[6]We acknowledge, however, that Artco's right to limited liability for the § 408 claim may be inherently protected because of the *in rem* nature of the cause of action.

that is questionable, was raised for the first time on appeal, and would require us to substitute our discretion for that of the district court.

## IV.

Artco argues that the district court erred in denying Artco's motion to hold the government in contempt for noncompliance with the district court's concursus injunction. We disagree. In Artco I, the district court had held that the government's § 408 claim was not subject to the Limitation Act. On appeal, we did not decide whether the government's § 408 claim was subject to limitation, and we suggested the possibility that if the government had a claim that was not subject to the Limitation Act, it could assert that claim independently from the limitation proceeding. See Artco I, 728 F.3d at 844 ("CF Industries and similar cases demonstrate only that the government need not appear in the limitation proceeding at all to assert its claims when those claims are not subject to the Limitation Act."). Although the government's filing of a separate suit violated the plain terms of the district court's injunction, our opinion and the district court's prior holding suggested that the injunction may have been overbroad to the extent it enjoined separate proceedings for claims not subject to the Limitation Act. The district court thus did not abuse its discretion in denying the motion to hold the government in contempt and to impose sanctions. See Wycoff v. Hedgepeth, 34 F.3d 614, 616 (8th Cir. 1994) (standard of review).

## V.

We reverse the district court's *sua sponte* dismissal of Artco's limitation action. We affirm the district court's denial of Artco's motion to hold the government in contempt and to impose sanctions. We vacate the district court's denial of Artco's motion for a decree of exoneration, the denial of the government's motion to file a late claim, and the denial as moot of the government's motion to consolidate, and we

-18-

remand the case for consideration of those motions and for further proceedings consistent with this opinion.

RILEY, Chief Judge, concurring in the judgment.

Faced with "the unenviable task of deciding whether an impossibly obscure law (the [RHA]) prevails over a hopelessly anachronistic one (the Limitation Act)," we are—as the Fifth Circuit once described it—"adrift on muddied waters that lie at the convergence of two desultory streams of nineteenth century thought." Univ. of Tex. Med. Branch at Galveston v. United States, 557 F.2d 438, 441 (5th Cir. 1977) (agreeing with commentary from 1957 that the Limitation Act "has been due for a general overhaul for the past seventy-five years; seventy-five years from now that statement will be still true, except that the overhaul will then be one hundred and fifty years overdue" (quotation omitted)). Piloting between these two antediluvian acts, the majority makes a sound argument why the government's RHA claim is subject to the Limitation Act. Though I disagree with the majority's reconciliation of these two Acts, see In re Am. River Transp. Co., 728 F.3d 839, 848 (8th Cir. 2013) (Riley, C.J., dissenting), I believe we need not confront this statutory Scylla and Charybdis[7] and that the dismissal should be reversed for another reason.

By "marshalling" all assets and claims subject to the Limitation Act into a single concursus proceeding, Valley Line Co. v. Ryan, 771 F.2d 366, 372 (8th Cir. 1985), Artco's limitation proceeding is meant to provide the exclusive forum[8] in

---

[7]The Odyssey of Homer, Book XII, 194-95 (S.H. Butcher & A. Lang transls., The Macmillan Co. 1906) (1879).

[8]A line of cases following Langnes v. Green, 282 U.S. 531, 539-44 (1931), commands district courts in specific situations to relax their injunctions on collateral proceedings. See, e.g., Lake Tankers Corp. v. Henn, 354 U.S. 147, 153 (1957); Valley Line, 771 F.2d at 372-73. I agree with the majority that this doctrine does not provide an alternative basis for affirming the dismissal. See ante at 17. Under this

-19-

which claimants could pursue these claims. See Fed. R. Civ. P. Supp. Rule F(3) ("[T]he [district] court shall enjoin the further prosecution of any action or proceeding against the plaintiff or the plaintiff's property with respect to any claim subject to limitation in the action."). Injured parties with such claims must, upon receiving notice of a limitation action, pursue them "in the limitation action under pain of default." 2 Thomas J. Schoenbaum, Admiralty and Maritime Law § 15-5, at 184-86 (5th ed. 2011). Indeed, the clerk of court in this case notified potential claimants that claims against Artco must be raised in a timely fashion in the limitation proceeding "or be defaulted."

Upon denying the government's motion to file a late claim and concluding there was no claim against Artco, the proper course was not to dismiss the limitation proceeding but to enter a default judgment in Artco's favor as against all properly noticed potential claimants with claims subject to the Limitation Act. See, e.g., Langnes, 282 U.S. at 540-41 (noting that no further claims appeared imminent because the time for filing "had expired and default had been noted"); In re Fun Time Boat Rental & Storage, LLC, 431 F. Supp. 2d 993, 1002 (D. Ariz. 2006) ("Since the Court concludes that [potential claimants] failed to properly file any claim in this action . . . [, the vessel owner] is entitled to exoneration from liability regarding the injuries suffered by [potential claimants] and that this action should be terminated."). On this ground, I concur in the majority's judgment that the district court's dismissal be reversed and remanded.

On remand, the district court should consider the remaining motions and should enter a default in Artco's favor only if it again denies the government's request to file a late claim.

—————————————————

doctrine, the point is to simply "*dissolve* or *relax* a concursus *injunction* . . . in certain situations," ante at 16 (emphasis added), so as to preserve the injured parties' rights by permitting a parallel action *alongside* the limitation proceeding. See Valley Line, 771 F.2d at 372-73. It is not a basis for *dismissing* the limitation proceeding. See id.